[Civ. No. 1671. Third Appellate District.—June 6, 1917.]

## J. W. TATUM, Appellant, v. IOWA WATER COMPANY (a Corporation), et al., Respondents.

Probate Law — Sales of Property — Recovery by Persons Interested—Statute of Limitations.—The provisions of section 1573 of the Code of Civil Procedure that no action for the recovery of any estate sold by an executor or administrator "under the provisions of this chapter" can be maintained by anyone claiming under the deceased, unless it be commenced within three years next after the settlement of the final account of the executor or administrator, applies to all sales, and includes sales made without notice under a will, as provided by section 1561 of such code.

Id.—Unauthorized Sale Without Notice—Applicability of Code Provision.—The provisions of section 1573 of the Code of Civil Procedure are applicable to a sale made without notice which was unauthorized, regardless of whether the order confirming the sale be void or voidable.

Id.—Order Confirming Sale—Collateral Attack.—An order confirming a sale of real property made by an administrator with the will annexed without notice is not subject to collateral attack on the ground that the court exceeded its jurisdiction in making the order by reason of the fact that it erroneously concluded that the power of sale in the will extended to such administrator, but is an erroneous judgment subject to correction on appeal.

Id.—Community Property—Liability for Administration Expenses of Husband's Estate—Power of Sale Under Will.—Under section 1402 of the Civil Code, the entire community property is equally subject to the charges and expenses of administering the husband's estate, and where his will gives his executor the power of sale, he may sell all of it to pay such expenses and charges.

APPEAL from a judgment of the Superior Court of Kern County, and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Kaye & Siemon, E. F. Brittan, and Joseph T. Tatum, for Appellant.

Melville P. Frasier, for Respondents.

BURNETT, J.—The action is to quiet title. The complaint is in the usual form and the answer avers title by virtue of an administrator's sale, and it pleads the bar of section 1573 of the Code of Civil Procedure. One Abisha S. Hudson, at the time of his death, held the title in fee and was in possession of the land, and the same was the community property of himself and wife, Rose E. Hudson. Decedent left a will wherein he appointed his wife and his niece, Mary F. Park, executrices of said will. Said will was admitted to probate, by the superior court of Kern County, on May 11, 1908, and, on said day, by written request of said Rose E. Hudson, W. Weyant was appointed administrator with the will annexed of said estate, who duly qualified as such and who continued to act in that capacity until his final discharge, on July 1, 1909. The said will contained the following clauses:

"First: Subject to the payment of my just debts and funeral expenses and expenses of administration, I devise and bequeath to my beloved wife, Rose E. Hudson, all of the property, both real and personal of which I die possessed, whether standing in my name, or in the name or names of any other person or persons whomsoever, for the term of her natural life, declaring it to be my will and wish that she shall have for her own use and benefit, during her life, not only the income of said property, but also such portion, or all of the property as may be necessary for her comfortable maintenance and support.

"Second: I authorize and empower my said wife to sell and dispose of any of the property hereby bequeathed, at such times and in such manner, and for such price as to her may seem best, and to reinvest the proceeds of such sale as to her may seem proper. . . .

"Seventh: I constitute my beloved wife, Rose E. Hudson of Stockton, California, and my niece Mary F. Park of Stockton, California, the executrices of this my last will and testament, and direct that no bonds of any kind shall be required of them, or either of them.

"Eighth: I hereby authorize and empower my said executrices to sell any and all of the property of which I die possessed of whatever kind and wherever situated, with or without notice, and at public or private sale, according to their best judgment, and without any order from any court having jurisdiction of my estate."

On June 5, 1908, Weyant, as administrator, sold the land in controversy to W. A. Sage, for $2,020. He filed his return of sale the next day, the sale was confirmed by the court June 16, 1908, and the administrator was directed to execute a deed to the purchaser. The order of confirmation of said sale contains this language: "W. Weyant, administrator with the will annexed of the estate of Abisha S. Hudson, deceased, having made to this court, and filed in the office of the clerk his return of sale, made under the power in will on file herein, . . . and it duly appearing to the court that authority is given in the will of said Abisha S. Hudson, deceased, to sell any and all property of said estate of whatsoever kind and wherever situated, with or without notice, and at public or private sale, according to the best judgment of the executors of said will and without any order from any court having jurisdiction of said estate; and it appearing that the proceedings for the sale of said real estate were fair, that the sum bid was not disproportionate to the value of the land, . . . that said sale was legally made and fairly conducted, and the court being fully advised in the premises; wherefore, it is by the court ordered, adjudged and decreed, that the said sale be, and the same is hereby confirmed and approved," etc.

On June 17, 1908, Weyant, as administrator, executed and delivered to W. A. Sage a deed to said land containing recitals as to the sale and confirmation and granting, in proper phrase, "all the right, title, interest and estate of the said Abisha S. Hudson, deceased, at the time of his death, and also all the right, title and interest that the said estate, by operation of law or otherwise, may have acquired, other than, or in addition to, that of said testator at the time of his death, in and to all that certain lot, piece or parcel of land," etc. On June 5, 1908, W. A. Sage and wife conveyed said land to the Iowa Land and Water Company, and, on May 1, 1911, the said company conveyed to the Iowa Water Company, reserving a right of way over a certain portion of it.

The final account of Weyant as administrator was settled October 26, 1908, and the said account shows the disposition of the cash realized from said sale as follows: "Expenses of administration, $620.70. Cash paid Rose E. Hudson, $1280.00 Cash on hand, $119.30." On July 1, 1909, receipt of Rose E. Hudson for $118.60, balance of cash distributed to her, was filed. The decree of distribution in said estate, filed October

26, 1908, distributed to her all the personal property of said estate, including the net proceeds of said sale, but did not purport to distribute to her any interest in the land in question.

On June 26, 1912, Rose E. Hudson executed and delivered to appellant a quitclaim deed of all her interest in said land.

Subsequent to the date of the said conveyance to the Iowa Land and Water Company it bored wells on the land in question and constructed a canal leading therefrom to certain lands in Tulare County which it had purchased with said land sold by Weyant, and it developed a system for the distribution of water. In the prosecution of this enterprise it expended many thousand dollars on the land involved herein, and it appeared that respondents have been in the actual possession of it continuously since its purchase from W. A. Sage.

Appellant heard rumors that there was a flaw in the title of the Iowa Water Company to this land, and he thereupon investigated the transaction of the sale by said administrator and searched the records for himself, and concluded, so it seems, that he might make some easy money. He had actual knowledge of the claim of title and of the possession of the Water Company, and he knew that respondents had expended large sums of money in improvements. He opened negotiations for the purchase of said lands from Mrs. Hudson, although he did not communicate directly with her and she never indicated that she claimed ownership of any interest in the land. He made his offer through a trust company at Bakersfield and paid three hundred dollars for a quitclaim deed from Mrs. Hudson, the said land being of the value of sixty-four thousand dollars.

In a few words, reducing it to its essential elements, we have this situation: Respondents purchased the land in good faith for a valuable consideration at a sale by the administrator of the estate. This sale was confirmed by the superior court. It was known to Mrs. Hudson, who never questioned it and who accepted the net proceeds of the transaction. In fact, it is fair to say, she had knowledge of every step in the administration and probably had Mr. Weyant appointed administrator for the purpose of effecting this very sale. For more than four years after the sale and for three and one-half years from the date of settlement of the administration she made no complaint; she acquiesced in everything that was

done; she took no steps toward asserting any right or claim in the land. Indeed, we are justified in saying that since the sale she never has asserted any claim. She did indeed execute a quitclaim deed for the paltry sum of three hundred dollars, but this was upon the solicitation of appellant, and is significantly suggestive of her want of confidence in any substantial basis for disputing the title of respondents.

On the other hand, we have appellant eagerly listening to some vague rumor that there was a slip somewhere in the legal steps leading to this title, and he quietly steals into the recorder's office and, after investigation, concludes that the court was without jurisdiction to confirm said sale, and he therefore generously offers and pays three hundred dollars for the privilege of depriving respondents of property worth sixty-four thousand dollars, which they have paid for and made valuable by their improvements.

Assuredly, there should be some law—and there is—to confirm a transaction undoubtedly just and equitable and to bring to naught what is equally reprehensible and iniquitous.

Section 1573 of the Code of Civil Procedure provides: "No action for the recovery of any estate sold by an executor or administrator, under the provisions of this chapter, can be maintained by any heir or other person claiming under the decedent, unless it be commenced within three years next after the settlement of the final account of the executor or administrator." As we have seen, the action herein was not brought within said statutory period, and, we may add, the bar of the statute was pleaded by respondents and found by the court.

There is no merit in the contention that, by reason of the fact that the sale was without notice, it was not "under the provisions of this chapter." The chapter applies to all sales made by an executor or administrator, whether notice is required or whether dispensed with by provisions of the will. It contemplates "sales and conveyances of property of decedents," as shown by the caption of the chapter. It embraces all probate sales of personal property and real estate. Indeed, there is a special section, No. 1561, which directly applies to sales made without notice. It provides: "When property is directed by the will to be sold, or authority is given in the will to sell property, the executor may sell any property of the estate without order of the court, and at either public or private sale, and with or without notice, as the

executor may determine; but the executor must make return of such sales as in other cases. . . . In either case no title passes unless the sale be confirmed by the court.''

That administrators with the will annexed are placed in the same category as executors appears from section 1356 of the same code.

The fact is that said chapter embracing sections 1516 to 1579, inclusive, furnishes the legislative authority for all sales of the estates of deceased persons and the procedure required to secure legal confirmation of the title thereby transferred, and we can see no reason for holding that said section 1573 does not apply to a sale made without notice, as provided in the will.

Nor is it sufficient answer to say that the sale without notice was unauthorized, and therefore the order of confirmation was without jurisdiction and void. Said section 1573 applies to valid, void, and voidable sales. That seems to be established in this state.

The leading case is *Harlan* v. *Peck*, 33 Cal. 515, [91 Am. Dec. 653], wherein it was claimed that the sale was void for the reason that jurisdictional facts were omitted from the petition for sale. The section of the probate act therein construed was similar to the section of the code involved herein, and the court said: ''The policy of the statute is to quiet titles to real estate sold by order of the probate courts. In view of that policy, merely, there can be no distinction between sales which may be termed void for the want of jurisdiction, and those which are voidable only. Nor is there anything in the language of the statute which creates such a distinction. The claim that such a distinction is created by the phrase 'under the provisions of this chapter' cannot be sustained. To so hold would be to nullify the statute, for if, as suggested, we read the phrase as meaning '*according* to the provisions of this chapter,' the limitation would be confined to sales in all respects valid, as to which, for obvious reasons, there can be no occasion for a statute of limitations. . . . So the defendant in every case would be compelled to allege and prove a valid sale before he could invoke the protection of the statute; or, in other words, he must show that he stands in no need of protection in order to obtain protection. . . . We think the statute applies to all sales, void as well as voidable, made by probate courts, of real estate belonging to persons who have

died since the passage of the probate act.'' This case is followed in *Ganahl* v. *Soher,* 68 Cal. 95, [8 Pac. 650] ; *Reed* v. *Ring,* 93 Cal. 96, [28 Pac. 851] ; *Dennis* v. *Bint,* 122 Cal. 39, [68 Am. St. Rep. 17, 54 Pac. 378] ; *Bagley* v. *Bloom,* 19 Cal. App. 255, [125 Pac. 931].

For affirmation of the same doctrine we may refer also to *Meeks* v. *Olpherts,* 100 U. S. 564, [25 L. Ed. 735] , *Young* v. *Walker,* 26 Kan. 242, and *O'Keefe* v. *Behrens,* 73 Kan. 469, [9 Ann. Cas. 867, 8 L. R. A. (N. S.) 354, 85 Pac. 555]. In the last of these it is said: ''The state itself, as a matter of public policy, is interested in the repose and stability of land titles, in the development and improvement of landed property which doubtful tenures prohibit, and in the repression of vexatious and speculative litigation. These considerations apply as well to sales made without notice as to those of which the heirs have been legally informed. A title which is not infirm needs no statute of limitations for its protection. If there be no defects, remedial legislation is superfluous. . . . Although length of years may not give jurisdiction or, in a certain sense, make good that which is void, an act of the legislature may, out of consideration for the public welfare, oblige interested persons to assert their rights within a limited time or forever hold their peace.''

Regardless, then, of the question whether the legal title to the land is vested in respondents, appellant is too late to maintain any claim to the property.

Moreover, it cannot be said that the court acted in excess of its jurisdiction in confirming said sale. There was at most an erroneous judgment subject to correction on appeal but not open to collateral attack. The court admittedly had jurisdiction to construe the will of Hudson after it was admitted to probate. The court was apprised that no notice of the sale had been given. It would, of course, take judicial knowledge of the law requiring notice in ordinary cases, and we must presume that the will was examined to ascertain if therein authority was delegated to the executor to make a sale without notice and without an order of the court. The court found that such power was conferred, and, having in mind said section 1356, it reached the conclusion that the administrator with the will annexed had like authority, at least for the payment of the expenses of administration, which appeared from the return to be the purpose of the sale. The language of the

decree of confirmation clearly shows that the court so considered and construed the provisions of said will, and its judgment of interpretation became final and binding upon all parties after the time for appeal had expired. Whether said judgment was right or wrong cannot be litigated in this proceeding. Of course, the rule is well settled as stated in *Morrissey* v. *Gray*, 162 Cal. 638, [124 Pac. 246], as follows: "All intendments are in favor of the validity of judgments of courts of general jurisdiction, and the jurisdiction of such courts in rendering a particular judgment is conclusively presumed to have been acquired unless the record itself shows to the contrary."

A similar question was involved in *Bagley* v. *Bloom*, 19 Cal. App. 255, [125 Pac. 931], a case ably and thoroughly argued and carefully considered, and it was determined that the decree confirming the sale was a final determination that the will authorized the sale without notice and that said construction was no longer open to dispute.

In *Crew* v. *Pratt*, 119 Cal. 139, [51 Pac. 38], the validity of a trust provision ·in the will of O. C. Pratt, deceased, was attacked, and the court held that in order to decree the distribution of the estate it devolved upon the court to determine whether or not there was a valid trust created by the will, and having done so and adjudged it to be valid, "while the conclusion was erroneous and the judgment open to reversal on appeal, yet as no appeal was taken therefrom and as the time therefor has long since expired, it is not now open to collateral attack."

There are many cases to the same effect, but it seems unnecessary to multiply citations.

If there had been no will and the court had attempted to confirm the sale made without notice or upon insufficient notice, and the said infirmity appeared on the judgment-roll, the case would fall within the line of authorities cited by appellant. In that event it would affirmatively appear that the sale was contrary to the express provision of the statute and therefore invalid. But we are not confronted with that situation. Herein the record shows that the court was legally authorized to determine, and it did determine, every question incident to and involved in the judgment of confirmation, in such manner as to protect said judgment from anything other than a direct attack. Indeed, we are satisfied that the action of the court

was not even erroneous, but that the construction placed upon said will as to the authority to make the sale without notice was entirely warranted.

As to the point that no more than one-half the property was sold in any event, it is sufficient to refer to section 1402 of the Civil Code, providing that the entire community property is equally subject to the debts of the husband, the family allowances, "and the charges and expenses of administration." The section was applied in *Sharp* v. *Loupe*, 120 Cal. 89, [52 Pac. 134, 586], wherein the executors sold community property to pay debts. It was held that the interest of the surviving widow in the community property is that of an heir and that her title thereto is to be administered as part of the estate of her husband; that the acts done in the administration of the estate were authorized by the statute and are binding upon all persons interested in the estate. Upon a rehearing the opinion was construed and limited "as holding that the husband can confer upon his executor testamentary authority to sell or otherwise dispose of the community property for the purpose of satisfying claims and demands which by the statute are made chargeable upon the community property." (See, also, *Estate of Burdick*, 112 Cal. 387, [44 Pac. 734]; *Estate of Moffitt*, 153 Cal. 359, [20 L. R. A. (N. S.) 207, 95 Pac. 653, 1025]; *Estate of Warner*, 6 Cal. App. 361, [92 Pac. 191].)

There is no doubt here that the sale was intended to and did include the whole fee, and, being for the costs of administration it constituted a legal charge against the whole of the estate.

Other meritorious considerations urged by respondents are that appellant, by reason of the acceptance by Mrs. Hudson of the proceeds of the sale with knowledge of the transaction, is estopped from denying the validity of said sale; that, it being clear that the will of Hudson dealt with all the community property, and Mrs. Hudson having accepted the benefit of said will, could not reject it by asserting in opposition to it her own inconsistent proprietary rights, and that appellant cannot be held to be a purchaser in good faith and for value; that he is a mere volunteer who bought a lawsuit on speculation, and is therefore entitled to scant or no consideration in a court of justice. These propositions are elaborately

argued with the citation of numerous authorities, but what we have already said is, we think, decisive of the case.

Some of the findings are attacked as not supported by the evidence. They are probably not essential to the judgment, but, at any rate, it cannot be said that they are unsupported.

As to finding 4, it cannot be doubted that the court did inspect the will of said Abisha S. Hudson, deceased, and that from said inspection it was justified in concluding that the testator intended to and did treat of the whole of the land without regard to any community interest. It is true, also, as far as the record shows, that the decree of distribution entered in said estate distributed the whole of the community property of said deceased to his wife, Rose E. Hudson.

It cannot be said that the appraisement was only of one-half of the property. It purports to include the whole interest. As to the land herein, the appraisement. is as follows: "Section 35, T. 25 S. R. 23 E. 640 acres @ $3.50 per acre, $2,240.00." It was equivalent to saying that the whole section was worth $2,240. The appraisers stated that it was community property, which they were called upon to do, but it is clear that it was all appraised. Some of the other findings, which are criticised by appellant, are rational conclusions from an inspection of the judgment-roll in the said estate, and it is deemed unnecessary to notice them specifically.

We do not find any evidence that the improvements placed upon the land by respondents are of the value of fifteen thousand dollars, as found by the court, but the particular amount is, of course, unimportant, since it appears that they were and are of great value. Indeed, appellant himself testified: "I knew that defendant Iowa Land and Water Company had purchased the land of Sage; that they were in possession and had expended large sums in improvements."

Appellant has displayed ability and learning worthy of a better cause, and we have given due consideration to all the points made by him, but we are satisfied with the judgment and order of the trial court, and they are therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1917.