(No. 5596.   October 11, 1930.)

HENRY O. HARKNESS, JOHN ABNER HARKNESS and THEODORE R. HARKNESS, Appellants, v. W. F. HARTWICK, Respondent.

[292 Pac. 592.]

F. E. Tydeman, for Appellants, cites no authorities on points decided.

Merrill & Merrill, for Respondent.

LEE, J.—Sarah Harkness, as administratrix of her deceased husband's estate, secured an order of the probate court of Bannock county directing the sale of certain lands belonging to the estate. The sale was made and confirmed, the administratrix issued her deed, and through subsequent mesne conveyances the defendant and respondent, W. F. Hartwick, came into possession of a portion of the lands, the same being situate in Bannock county.

Appellants, all of whom were minor devisees at the time of sale, brought an action, some fifteen years later, in the district court of Bannock county to vacate such sale, charging certain invalidities and irregularities occurring in the sale proceedings, which they allege rendered the sale void. In addition, they charge that some of the proceedings were fraudulent. A general demurrer to the complaint was sustained, similar fate befell an amended complaint, and, after sustaining a general demurrer to the second amended complaint, the court dismissed the action. From the judgment of dismissal this appeal is taken.

Many of the points raised are in their nature identical with those heretofore disposed of in the companion case, *Harkness v. Utah Power & Light Co., ante,* p. 756, 291 Pac. 1051, and it is necessary to discuss only the additional charges.

The most serious contention is that the property was re-appraised on March 3, 1913, the day the sale was confirmed, at a sum approximately $22,000 less than the sum at

which it had been appraised during the year preceding. This, it is alleged, was done with the consent of the administratrix, her attorney and the appraisers for the purpose of making "it possible to sell the lands" and "defrauding the plaintiffs of their property." This is the only allegation of fraud in the complaint.

It will be noticed that there is an entire failure to charge respondent either with knowledge of or participation in the fraud alleged. He stands before the court as a *bona fide* purchaser, with conduct unassailed. It is fundamental that a sale will not be set aside for fraud, to the prejudice of the purchaser, without allegation and proof that the purchaser at such sale was a party to the fraud. Here, the original purchaser, one Foss, respondent's predecessor, has not been attacked at all. Furthermore, it is nowhere alleged that appellants have been in any way damaged by the fraud charged. The nearest approach to it is the claim that the property, between April 12, 1912, and March 2, 1913, "did not decrease in value in the sum of $22,126 as shown by the said appraisals." Under such an allegation negatively pregnant, though affirmatively made, what is there to charge that the value did not in fact decrease in the sum of $22,125? The order for re-appraisement attached to the complaint as an exhibit recites: . . . . , it satisfactorily appearing to the Court that the appraisement of the real estate belonging to the estate at or near Oxford in said County was appraised in the General Inventory . . . . and in the Amended Inventory thereafter filed too high, and that a re-appraisement of said property should be made, and that new appraisers should be appointed, etc." This was in direct consonance with the authority conferred by C. S., sec. 7630.

To the complaint that the re-appraisal was had on the day of confirmation, sufficient answer is furnished by the closing sentence of the section just cited: "This may be done at any time before the sale or the confirmation thereof." The order of confirmation recites that: "said real estate has been appraised within one year of the time of said sale, and that the sums aggregating the sum of $41,025 offered

by the said parties is more than 90% of the appraised value of said real estate, and that the said administratrix in all things proceeded and managed such sales as by the statute in such cases made and provided." The record shows that the re-appraisal of March 3, 1913, was in the sum of $42,572.

One of appellants' main contentions is that, contrary to the provisions of C. S., sec. 7602, the order to sell the real estate was made when the administratrix had in her hands about $45,000 worth of personal property. At that time, the estate's indebtedness amounted to $102,000: the administratrix had theretofore under proper order attempted to dispose of this personal property but without success, no bids having been offered therefor. Authorized by C. S., secs. 7616 and 7622, the probate judge deeming it necessary and for the best interests of the estate, ordered the real estate sold, a matter wholly within his discretion, in the exercise of which the record shows no abuse.

That some of the property sold was situate in Oneida county, while all the sale notices were posted in Bannock county, cannot affect the sale of the specific portion involved here: it lay in Bannock county.

Judgment affirmed; costs to respondent.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.