**SMITH, Gd'n, v. SMITH et al.**

No. 25428.    March 2, 1937.

Rehearing Denied June 15, 1937.

N. E. McNeill and Welcome D. Pierson, for plaintiff in error.

McCollum & McCollum, Campbell & Biddison, and Spielman, Cantrell & McCloud, for defendants in error.

PHELPS, J.    This action had its inception and grew out of the same set of facts as delineated in cause No. 24934, J. O. Cales and A. D. Krow v. Jeff Smith, Guardian of John Smith, an Incompetent, and Nannie J. Smith, 180 Okla. 315, 69 P. (2d) 384, the opinion in which has this day been filed, and to which reference is hereby made for a more complete statement of facts.

George W. Smith was the eldest child of Esther Berry Smith, and Nannie J. Smith was appointed guardian of all three minors, said guardianship proceedings being a joint guardianship with the exception that separate accounts were kept for each minor. George W. Smith reached his majority on February 24, 1930, but the guardian, Nannie J. Smith, kept on handling his affairs until March, 1931, when she filed her final account, and the same was heard and approved by the county court of Osage county on May 18, 1931.

It appears that when said final account was prepared for filing it was presented to the ward, George W. Smith, and he made the following endorsement thereon:

"I have carefully checked this report and find it to be correct. The same is approved by me." .

It was also submitted to and approved

by the Superintendent of the Osage Indian Agency. Notice was given and hearing was had. No objection or exceptions were made or filed, and the ward was in court at the hearing, and upon hearing the county court, among other things, made the following order:

"It is, therefore, ordered, adjudged and decreed by the court, that the final report and account of Nannie J. Smith, covering a period of time from the 30th day of March, 1930, to the 27th day of March, 1931, be, and the same is hereby approved and confirmed in all respects and in all things.

"It is further ordered, adjudged and decreed by the court that all of the annual reports and accounts filed by said guardian, and all of the acts and doings of the said Nannie J. Smith, guardian of George W. Smith, during the period of time from the date of her appointment be and the same are hereby in all things approved and confirmed.

"It is further ordered, adjudged and decreed by the court that Nannie J. Smith, guardian, be, and she is hereby authorized to draw a check in favor of her for her services as guardian of George W. Smith during the period of time referred to in said final report and account in the sum of $300 and she is further authorized to draw a check in the sum of $150 payable to Welcome D. Pierson, her attorney, for his services as attorney for said guardian during the period of time shown in said final report and account.

"It is further ordered, adjudged, and decreed by the court that in view of the fact that it has been indicated at this hearing that new guardianship proceedings are being instituted, and a new guardian probably will be appointed for the said George W. Smith after he has been adjudged an incompetent, that she withhold the deliveries of securities she now has in her hands as guardian until after a hearing has been had with reference to the adjudication of the said George W. Smith as an incompetent, and that in event the said George W. Smith is adjudged an incompetent, and said Nannie J. Smith shall deliver to said new guardian the securities she now has in her possession and shall pay the court costs herein, including the items of expenditure referred to above and thereafter file herein her final checks, vouchers and receipts as guardian, and thereupon receive her discharge and the release of the sureties upon her official bond.

"(Seal)   Henry Wood,
      "County Judge."

In obedience to this order, Nannie J. Smith, the guardian, delivered to the new guardian, Jeff Smith, all the property in her hands belonging to said ward, including certain certificates of time deposit in the Bank of Commerce, Ralston, Okla. Then following, on the 9th day of September, 1932, Jeff Smith, the new guardian, filed suit in the district court of Osage county against the former guardian and sureties on her guardian's bond, praying that the approval of the former guardian's final account be set aside for fraud and that she be surcharged the amount represented by the certificates of time deposit, and from an adverse decision in that court Jeff Smith, the father and new guardian, prosecutes this appeal.

Plaintiff in error presents 21 assignments of error, some of which have been disposed of in the other cases growing out of this guardianship matter. We are unable to concur in the conclusion reached by the learned trial judge as a basis for his judgment in all respects, but after a careful examination of the record, briefs, and authorities therein cited, we conclude that the judgment must be sustained upon the third and fourth propositions presented by defendants in error, the third of which is that:

"The district court of Osage county had no jurisdiction of this case because plaintiff neither alleged nor proved fraud extrinsic to the record."

Counsel for defendants in error in their brief cite Garrett Biblical Institute v. Minard, 82 Kan. 338, 108 P. 80, wherein the Supreme Court of Kansas had under consideration the setting aside of a judgment for fraud extrinsic to the record, and that court used this language:

"The same question was considered at length and supporting authorities cited in Plaster Co. v. Blue Rapids City Township, 81 Kan. 730, 106 P. 1079. The view adopted there was that when a party had been summoned into court, and has had an opportunity to contest an issue which goes into judgment, whether he avails himself of the opportunity or not he is not entitled to have the judgment set aside and be granted another trial of the same issues merely because the facts alleged in his petition, or the testimony offered and upon which the judgment is founded, are untrue. There would be no finality in a judgment, and no end of litigation, if the contrary view were taken. It was stated as a general rule 'that an act for which a court of equity will set aside or annul a judgment between the same parties, rendered by a court of competent jurisdiction, has relation to fraud extrinsic or collateral to the matter tried

by the first court, not to fraud in the matter on which the judgment was rendered. * * * By the expression "extrinsic" or collateral fraud" is meant some "act or conduct of the prevailing party which has prevented a fair submission of the controversy." McCormick v. McCormick (Kan.) 107 P. 546."

We are not unmindful of the fact that in the other cases growing out of this controversy we have just held that the investment of the ward's funds by the guardian in certificates of time deposits in the bank were illegal investments, for which the guardian and the sureties on her bond might be held liable, particularly where such investments are neither authorized nor approved by the county court. However, in the instant case the ward had attained his majority and he had not then been declared incompetent. He specifically approved the account and neither he nor his father made any objection to the account, but on the contrary the certificates of deposit were by the outgoing guardian turned over to the new guardian and the new guardian even collected some of the money on the certificates of deposit, and it was not until several months after the final account had been approved, in which approval the accounts were specifically approved, that they saw fit to make complaint concerning the illegal investment. If the ward and his father, who was appointed his guardian after he was declared incompetent, were not satisfied with the investment, they should have made objection at the proper time, and they had a right to appeal if their objections were overruled. But not having done either, we are unable to find either in the petition or the evidence offered the allegations or the proof necessary to constitute that degree of fraud essential to setting aside the judgment and order of the county court approving the final account.

With much merit also the defendants in error urge that:

"Until there has been a final order of the county court surcharging the guardian, settling her accounts and removing or discharging her, there can be no action against the sureties on her bond."

This contention is supported by the following authorities: Franks v. Franks, 155 Okla. 91, 7 P. (2d) 866; Brewer v. Perryman, 62 Okla. 176, 162 P. 791; Wood v. Chapman, 87 Okla. 49, 211 P. 396, and In re Talomase's Estate, 98 Okla. 212, 255 P. 156. A similar case was before the Vermont court in Scoville v. Brock, 54 A. 177, in which the court said:

"The final settlement of a guardian's account, made on notice after the ward becomes of age, is within the general rules relating to the conclusiveness of judgments. 2 Black on Judg. § 644; 15 A. & E. Ency. Law (2d Ed.) 115; Garton v. Botts, 73 Mo. 274. We have seen that the record of this accounting brings the matters complained of within the scope of the decree. So the questions raised regarding the defendant's administration of his trust are res judicata, and the determination is conclusive as against this bill."

The judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, BUSBY, and CORN, JJ., concur. GIBSON, J., dissents. WELCH, J., absent. HURST, J., not participating.