**CALES et al. v. SMITH, Gd'n, et al.**

No. 24934. March 2, 1937.

Rehearing Denied June 15, 1937.

Leahy, Macdonald & Files, Donald H. Waid, Biddison, Campbell & Biddison, Spielman, Cantrell & McCloud, and McCollum & McCollum, for plaintiffs in error.

N. E. McNeill, for defendants in error.

PHELPS, J. Esther Berry Smith, a full-blood Osage Indian citizen, died intestate without ever having received a certificate of competency, leaving surviving as her heirs at law her husband, Jeff Smith, and three minor children, to wit, George W. Smith, John Smith, and Elizabeth Smith, said children being unallotted minor Osage Indians of the half blood.

An administrator was appointed and the restricted funds in the hands of the Indian Agency belonging to said Esther Berry Smith, amounting to more than $100,000, were turned over to the administrator under the apparent mistaken belief that her death removed the restrictions.

Nannie J. Smith, the grandmother of said minors, was appointed guardian, and their portion of said estate was turned over to her after she had made a satisfactory bond upon which J. O. Cales and A. D. Krow appear as sureties. The funds were deposited in the First Commerce Bank of Ralston, Okla., in which bank said sureties were the principal stockholders. A portion of these deposits was evidenced by certificates of time deposits issued by said bank.

From this point this opinion will consider the questions involved in which the minor John Smith alone is concerned. John Smith, the minor. having reached his majority, the guardian filed her final account and report as such guardian. She presented as a part of the assets of the minor's estate three certificates of deposit in the First Commerce Bank of Ralston, totaling $9,360. Exceptions were filed to this report by both Jeff Smith, the father, who was subsequently appointed guardian of his son after he had been adjudged an incompetent, and the Superintendent of the Osage Agency, upon the grounds that these certificates of deposit represented investment of the funds without authorization or approval of the county court, and upon hearing, the county court sustained the objections and surcharged said guardian with the amount represented by these certificates of deposit. Eleven days later the bondsmen filed their motion for a new trial, which was in due course overruled.

From this order of the county court an appeal was taken by the bondsmen above, to the district court, where the judgment and findings of the county court were sustained. Upon order of the county court suit was brought in the district court of Osage county against the former guardian and the sureties on her bond, and from a judgment in favor of the plaintiff this appeal is prosecuted.

It appears from the findings of fact of the trial court that when Cales and Krow signed the guardian's bond they had an agreement with the guardian that she was not to withdraw the funds from the bank unless Cales, one of the sureties, countersigned the check, and that in obedience to this arrangement she deposited in this bank with a capital stock of only $10,000 approximately $60,000 in guardian's funds, and that trouble finally resulted when the bank

became insolvent and was ultimately taken over by the State Banking Department.

Plaintiffs in error first urge that the action was not brought by the real party in interest. The moneys turned over to this guardian were trust funds which had accumulated in the hands of the Indian Agency over and above the regular quarterly payments made to Esther Berry Smith, and it is contended by plaintiffs in error that inasmuch as the federal government had supervision of and control over the funds in question, it is the real party in interest and the cause cannot be prosecuted without it becoming a party to the action.

Counsel for plaintiffs in error have favored us with very exhaustive, interesting, and illuminating briefs upon this question, and give particular emphasis to the case of Hickey v. U. S., 64 Fed. (2d) 628. After a careful study and analysis of these briefs and authorities cited, however, we are unable to agree with learned counsel. We must not lose sight of the fact that this guardian's bond is a statutory bond, and the rights and duties of the parties are defined by its terms. It is an obligation on the part of the guardian that she will account to the wards for the funds belonging to them and entrusted to her as such guardian, and a guaranty on behalf of the sureties that the minor's money will be forthcoming at the proper time.

The plaintiffs in error claim that the money in question did not belong to the minor. To be sure the government of the United States, in its zeal to safeguard the interests of the Indian, exercised certain supervisory control over his estate, but at no time has the government claimed any right to or ownership in these funds except in so far as it may be necessary to properly safeguard them. We do not hold that the government could not prosecute the action to properly safeguard and protect the Indian's estate, but we do hold that the guardian is not precluded from doing so merely because the government is not made a party.

This court had a question similar in point of law before it in Moore v. Leigh-Head & Co., 48 Okla. 228, 232, 149 P. 1129, 1130, and in that case we said:

"The provision common in all statutes that the action must be prosecuted by the real party in interest has been the subject of much judicial consideration, and the courts universally hold that the object of this provision of the statute is to make it possible always for the defendant to be able to present his defense to the action, should he have a defense or set-off against the real party in interest; but in an action, as in the case at bar, the defendant has no concern in the question as to who the real party in interest is, except where he has pleaded a defense which turns upon points involving the personal conduct of the real party, and a failure to state any defense against the alleged real parties prevents the defendants from complaining that the plaintiffs are not the real parties in interest."

It is next contended by plaintiffs in error that the certificates of deposit were legal investments of the minor's funds. It appears that the guardian filed her annual reports regularly with the county court, after they had been submitted to the Superintendent of the Indian Agency and by him approved, and that these annual reports and accounts were also approved and allowed by the county court. It is contended that, since these reports and accounts were approved by both the Indian Agency and the county court, the guardian was relieved and exonerated from further responsibility or liability upon the same items appearing in her final account and report.

On the other hand, it is contended by defendant in error that these certificates of deposit amounted, in fact, to a mere loan to the bank without security and that the certificates of deposit were, in fact, mere unsecured notes of the bank. Section 1459, O. S. 1931, limits the authority of the guardian to invest his ward's funds to the security therein named. This section reads as follows:

"The money belonging to estates of minors and incompetent persons, subject to the jurisdiction of the county court can only be invested in real estate and first mortgages upon real property which do not exceed fifty (50%) per cent. of the actual value of the property, United States bonds, state bonds, and bonds of any municipal corporation and in building and loan stock of Oklahoma building and loan associations."

Defendant in error also denies that the approval of the annual accounts and reports of the guardian by the Indian Agent and the county judge relieved the guardian from further responsibility on the items therein shown or that the approval of these items precluded the county court from surcharging the guardian in her final account. In support of this contention they cite many respectable authorities, the leading one of

which is In re Cobb's Estate, 66 Okla. 53, 54, 166 P. 885, 886. In that case, in the body of the opinion, this court said:

"The second assignment of error complains that the court erred in surcharging the account of plaintiff in error with the sum of $500 allowed to plaintiff in error by the county court of Creek county for services as guardian, because the same was allowed and approved by the county court of Creek county and said allowance was final and conclusive. * * * These items had all been included in annual reports made by the plaintiff in error, which reports had been approved by the county court. It is therefore urged by plaintiff in error that the approval of such reports is final and conclusive; and that the correctness of said items cannot be questioned upon the final report of the guardian. We cannot agree with this contention of plaintiff in error. In 12 R. C. L. p. 1154, it is said:

"'The annual account is a part of the regular administration of the court, is intended to inform the judge and also interested parties of the status and general condition of the guardianship, and is usually accepted and filed ex parte and without a hearing. Besides, the ward, who is the party in adverse interest, is legally and usually actually incapable of protecting his own interests, and the one whom the law charges with the duty of asserting and protecting his rights is in this matter the adverse party. It would therefore be grossly unjust to make the annual accounts conclusive against the ward, though they have been accepted by the court. They are prima facie evidence of the state of the account, but are subject to re-examination in settling later accounts.' Indiana Trust Co. v. Griffith, 176 Ind. 643, 95 N. E. 573, 44 L. R. A. (N. S.) 896, Ann. Cas. 1914A, 1023."

Both the county court and the district court of Osage county apparently adopted this rule in disposing of the case, and in so doing, in view of the authorities cited, no error was therein committed.

It is next contended by plaintiff in error that the judgment herein is void because it is based upon a void probate decree, and in their brief counsel for plaintiffs in error say:

"We do not contend that a guardian's bond is not liable for defalcation of the estate or property of the ward, but we do contend that such bond does not run to and the sureties thereon are not liable for funds or property received by the guardian otherwise than in her capacity as guardian, or for money which comes into the hands of the guardian but does not belong to the ward, or for money improperly paid to the guardian, or for money which the guardian, as such, has no authority to receive."

Counsel then proceed with their argument, basing the same upon the assumption that the money in question belonged to the government, and they contend that the guardian was a mere agent of the Secretary of the Interior to hold the funds, and that when she invested the funds in a manner not authorized by our statute, then neither she nor the sureties on her bond should be held accountable upon the order, judgment, and decree of the court from which she obtained her authority. We cannot follow the logic of this argument. In our judgment the authorities cited do not hold that the funds mentioned in said authorities were the actual property of the government or any of its agencies. Certainly, in the instant case the government did not and has not laid any claim of ownership to the funds, but merely the right, under the various acts of Congress, to supervise and control the same, to the end that the Indian's estate might be properly conserved and ultimately used for its owner's benefit. In Barnett v. Equitable Trust Co. of New York, 34 Fed. (2d) 916, the Circuit Court of Appeals, Second Circuit, had under consideration questions involving the restricted estate of Jackson Barnett, an incompetent Creek Indian, and in the body of the opinion we find the following language:

"Barnett might have sued alone, as he did (Tiger v. Western Investment Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738), or the United States might have sued for him (Heckman v. U. S., 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820)."

The above, at least to a certain extent, also answers the argument of plaintiffs in error upon the first proposition hereinbefore discussed.

The county court of Osage county settled the final account of the former guardian, Nannie J. Smith, on July 7, 1932, and ordered her to pay over to the new guardian the amount surcharged against her. Notice of appeal to the district court of Osage county was given, and an appeal bond in the sum of $500 was made, but no supersedeas bond was given or stay of execution asked. On August 20, 1932, upon the application of the new guardian, the county court authorized suit to be filed against the former guardian and sureties on her bond.

The county court's order of surcharge was made on July 7, 1932. No appeal from that order was taken by the guardian. Up-

to that time the sureties on her bond, the plaintiffs in error here, had not appeared. On July 18, 1932, they filed their unverified motion in the county court in which they prayed that the order of surcharge be vacated and set side. On August 6th the court overruled this motion and on the same day they gave notice of their intention to appeal to the district court and gave an appeal bond in the sum of $500. On August 20th the guardian filed application for permission to bring suit, and on August 24th the county court granted such permission and ordered suit filed against the guardian and her bondsmen. Under this state of the record plaintiffs in error contend that the action was prematurely brought against them for the reason that the order of surcharge, in so far as it applied to them, had not become final, and that so long as that matter was pending in any court no suit could be maintained against them.

On the other hand, the defendants in error contend that, inasmuch as no supersedeas bond was given, suit could be maintained at any time after the surcharge judgment was entered.

Section 1397, O. S. 1931, provides that:

"An appeal may be taken to the district court from a judgment, decree or order of the county court: * * * Sixth. Settling an account of an executor, or administrator. * * * Eighth. From any other judgment, decree or order of the county court in a probate cause, or of the judge thereof, affecting a substantial right."

Section 1399, O. S. 1931, provides that:

"A person interested in the estate or funds affected by the decree or order, who was not a party to the special proceeding in which it was made, but who was entitled by law to be heard therein, upon his application, or who has acquired, since the decree or order was made, a right or interest which would have entitled him to be heard, if it had been previously acquired, may also appeal as prescribed in this article. The facts which entitle such person to appeal, must be shown by an affidavit which must be filed with the notice of appeal."

Section 1400, O. S. 1931, provides:

"An appeal by a party, or by a person interested who was present at the hearing, must be taken within ten days, and an appeal by a person interested, who was not a party and not present at the hearing, within thirty days from the date of the judgment, decree or order appealed from."

Section 1404, O. S. 1931, provides:

"If the judgment, decree or order appealed from be for, or direct, the payment of money, or the delivery of any property, or grant leave to issue an execution, the appeal shall not stay the execution thereof, unless the appeal bond be furthermore conditioned to the effect that if the judgment, decree or order, or any part thereof be affirmed, or the appeal be dismissed, the appellant shall pay the sum so directed to be paid or levied, or, as the case may require, shall deliver the property so directed to be delivered, or the part thereof as to which the judgment, decree or order shall be affirmed."

It is not contended by plaintiff in error that the appeal bond given was intended in any sense as a supersedeas bond. In fact, the instrument shows on its face that that part of the original form of the bond which would indicate that it was intended as a supersedeas bond was stricken out before it was executed. Neither is it contended by plaintiffs in error that the affidavit of interest showing facts entitling them to appeal, as provided in section 1399, supra, was filed with the notice of appeal. However, such affidavit was filed on August 16, 1932.

In New Amsterdam Casualty Co. v. Scott, 106 Okla. 268, 234 P. 181, the county court of Cherokee county, Okla., surcharged the former guardian and ordered her to pay over to her successor guardian a sum of money due from the sale of real estate. The New Amsterdam Casualty Company, which was surety on her sale bond, appealed from this order of the county court to the district court. The district court affirmed, in part, the judgment of the county court. It appealed from that judgment to the Supreme Court. The new guardian then filed suit against the casualty company and attached to his petition a copy of the judgment rendered by the district court. The casualty company pleaded and contended in the trial court that an appeal had been taken from the judgment of the district court upon which the action against it was based, that the appeal was pending in the Supreme Court and had not been decided and that no final judgment settling the accounts of the former guardian had been had; and that therefore the suit was prematurely brought, claiming that one of the conditions precedent to maintaining a suit against a guardian and her surety on account of funds due to the ward was a final adjudication of the amount due. In disposing of that question we used the following language (106 Okla. 270):

"In the case of In re Epley, 10 Okla. 631,

64 P. 18, this question was squarely passed on, construing section 800, C. O. S. 1921, which provides:

"'Execution of the judgment or final order of any judicial tribunal, other than those enumerated in this article, may be stayed on such terms as may be prescribed by the court or a judge thereof, in which the proceedings in error are pending.'

"The Epley Case was followed by this court in the case of Palmer v. Harris, 23 Okla. 500, 101 P. 852, 138 Am. St. Rep. 822, in a very well-reasoned and exhaustive opinion on this subject, authorizing trial courts in their discretion to require the execution of supersedeas bonds as a condition precedent to the staying of the judgment, and, while an appeal may be taken without the execution of the bond as required, such an appeal does not stay execution on the judgment in the trial court, and, in view of these authorities, we hold that in this case the supersedeas bond required, not being given, that suit based on the judgment may be properly maintained against the sureties on the guardian sale bond pending the appeal."

And in the third paragraph of the syllabus we used this language:

"Where the trial court requires the party aggrieved to execute a supersedeas or appeal bond, in the event of an appeal, and the appellant fails to execute the bond, the judgment of the trial court is not stayed, and, where the judgment is against a guardian, suit may be instituted against surety on the guardian's bond, pending the appeal."

As we view it, the language used in this opinion answers the contention of plaintiffs in error in the instant case. The judgment of the district court is therefore affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, BUSBY, and CORN, JJ., concur. GIBSON, J., dissents. WELCH, J., absent, HURST, J., not participating.