## DRUM v. AETNA CASUALTY & SURETY CO. et al.

No. 27988. Jan. 28, 1941.

Rehearing Denied July 1, 1941.

Application for Leave to File Second Petition for Rehearing Denied Sept. 16, 1941.

*116 P. 2d 715.*

Joseph D. Mitchell and H. P. White, both of Pawhuska, for plaintiff in error.

McCoy, Craig & Pearson, of Pawhuska, and West & Davidson, of Tulsa, for defendants in error.

DAVISON, J. This action is similar in nature to cause entitled Ruby Webb Wilson v. L. M. Duncan and the United States Fidelity & Guaranty Co., 188 Okla. 456, 110 P. 2d 596. Here, Charles Drum, another Osage Indian, seeks to recover the amount of certain funds which he claims were wrongfully disbursed from his so-called "restricted" income and personal property by his former guardian. The guardian, J. W.

308

McCool, having died several years prior to the filing of this action on the 21st day of May, 1936, his executrix was joined with the former surety on his guardian's bond as parties defendant therein. After the trial court had sustained several successive demurrers to Drum's petition and the various amendments thereto, the latter finally refused to plead further and judgment was entered dismissing the action. Thereafter, said plaintiff perfected this appeal. As the guardian's executrix has filed no appeal brief, in our further reference to the parties as they appeared in the trial court the word "defendant" will refer only to the surety company, except when a more specific designation appears in connection therewith.

As in the Wilson Case, supra, plaintiff's pleadings reveal that the guardian's final account was approved, he was discharged, and the surety company exonerated from liability on his bond by decree of the county court of Osage county which, in this instance, was entered November 24, 1926, or almost ten years before the commencement of the present action in the district court of said county. Here, too, the defendant surety company relies upon said decree as res adjudicata of all of the questions sought to be raised by the plaintiff's pleadings herein, and insists that since no surcharge appears to have ever been entered against McCool in the guardianship proceedings, plaintiff cannot maintain this action, citing Drum v. Citizens Trust Co., 184 Okla. 228, 86 P. 2d 308, and the authorities therein cited.

In an effort to avoid the operation of the principles cited in support of the trial court's ruling on the demurrers, plaintiff calls our attention to the fact that his pleadings contain an attack upon the validity of the county court's decree of November 24, 1926. His counsel cite allegations of his pleadings to the effect that the disbursements complained of as wrongful were all a part of the funds restricted by the Acts of Congress of April 18, 1912 (37 St. L. 86), and February 27, 1925 (43 St. L. 1008), and were not approved by the Secretary of the

Interior or Superintendent of the Osage Agency as is required by said acts. One of the propositions presented in his brief is that this lack of approval rendered the expenditures in question beyond the jurisdiction of the county court to approve or allow, and that consequently its decree purporting to do so is void. It is unnecessary for us to determine the validity of such a decree under such circumstances for the reasons stated in the Wilson Case. (See the 1st, 2nd, and 5th paragraphs of the syllabus thereof.) While it is true that in this case the plaintiff alleges that some of the guardian's disbursements were neither approved by the county court, nor the proper official of the Osage Agency, nor Secretary of the Interior, and he also alleges that the various orders entered by the county court with reference to the matter of disbursement were not approved by the Secretary of the Interior, still he does not charge that said proceedings and final decree of said court were void upon their face. We are aware of no rule or regulation possessing the authority of law which requires the orders of the county court in such matters to have the approval of any of the above-mentioned officials endorsed thereon, although we are cognizant of the provision of section 1 of the Act of Congress of February 27, 1925, supra, stating that "All payments to legal guardians of Osage Indians shall be expended subject to the joint approval in writing of the court and the Superintendent of the Osage Agency." In accordance with the principles adhered to in the Wilson Case, a further discussion of the plaintiff's theory that the county court's decree is no bar to his action because of his allegations that the disbursements therein allowed had never been approved by the proper officials of the Osage Agency or Department of the Interior is unnecessary until it is determined whether or not the facts relied upon by the plaintiff constitute a proper ground for the vacation of said decree in this action. Before directing our attention to the portion of the briefs dealing with this question, however, another one of the

plaintiff's three propositions should be noticed. It is that "matters not actually embraced in a final report of a guardian and therefore not presented to and not determined by the court" at the hearing thereon "are not concluded" by the decree approving said report. In connection with the proposition plaintiff's counsel has thus stated, they refer us to the following allegations of his amended petition to wit:

". . . Plaintiff further alleges that said (John) J. W. McCool as the legal guardian of plaintiff Charles Drum, then incompetent, lawfully, rightfully and legally received money belonging to the estate of said Charles Drum, incompetent, the sum of $302,653.70 as shown by his guardianship reports and accounts; that of said sum disbursed only the sum of $277,329.08 as shown by his guardianship reports and accounts, leaving a balance unaccounted for in his guardianship reports and accounts the sum of $25,324.62."

In support of their argument concerning these matters, counsel quote a portion of the opinion in Dunleavy v. Mayfield, 56 Okla. 470, 155 P. 1145, wherein this court cited the rule that a county court's order approving the final report and settlement of a guardian is not conclusive as "to matters not actually or necessarily embraced in the report and determined by such order"; and held that such an order "is not an adjudication of the guardian's negligence in failing to collect the assets of his ward's estate, unless that matter is covered by the final report approved." In our opinion, those expressions do not uphold the plaintiff's contention in this case. Of course, the question of a guardian's negligence in failing to collect the assets of his ward's estate is a matter neither "*necessarily*," nor in most cases "actually," before the court at the hearing of a guardian's final report, but his accountability and liability for portions of his ward's estate *shown by his reports to have actually been received by him* (as McCool's reports are alleged to have shown) are matters that are necessarily before the court, and thus are presumed to have been determined at such hearing unless it affirmatively appears that they were excluded. Though a sum of money or item of property is not accounted for in a guardian's report,. still, if said report shows it to have been received into the possession of the guardian, it cannot be said that the sum or item and its whereabouts, as well as the guardian's accountability and liability therefor, are matters not embraced within the report, nor presented to the court for determination; nor do allegations of such a character outweigh the presumption above mentioned or effectively challenge the scope or conclusiveness of such an adjudication. It would indeed be an anomalous situation if, after failing to appeal from such a decree and allowing it to become final, the former ward or his guardian could effectively challenge the scope, verity, or validity of the decree merely by referring to the guardian's reports. If the ward could do this, by the same token the guardian might defend a suit for money found due the ward in a decree refusing to approve his final report and entering a surcharge against him, simply by showing that his final report gave a plausible account of all such funds. Fortunately for both guardians and their wards, this is not the situation. The law recognizes that one of the principal purposes of the probate court's hearing upon such accounts is not only to test its correctness as to matters actually included therein, but to judge of its completeness, and to inquire into matters which by their nature should be, or that ordinarily and necessarily are, embraced in such an accounting. The guardian's liability or exoneration therefrom results not from the showing in his own report, but from the court's determination, after a hearing and investigation of the guardian's actual performance or stewardship. In the present case, the particular decree in question is not exhibited with plaintiff's allegations concerning it, and in the absence thereof and in accordance with the presumption we have mentioned, we must assume that the county court of Osage county, before rendering it, satisfied itself, from the evidence presented,

that McCool had discharged his duties with reference to the ward's property that was shown to have been taken into his possession and custody. For the foregoing reasons we see no merit in the last of plaintiff's two propositions hereinbefore considered.

The only asserted irregularity in said decree which is claimed to bring its vacation within the exclusive jurisdiction of the district court in the exercise of its equitable powers is that same was procured by fraud upon the court rendering it. As invoking this equitable jurisdiction, counsel for the plaintiff direct our attention to the allegations of his pleadings wherein the claim that the disbursements were allowed without approval by the proper officials is followed by the further claim that these alleged facts were concealed from the court as well as the additional facts that some of the items disbursed were in payment of alimony pendente lite, suit money, attorney's fees, and permanent alimony to plaintiff's former wife and her attorneys in connection with divorce proceedings wherein the wife irregularly obtained an allegedly void decree of divorce. The defendant herein asserts that said allegations concern intrinsic rather than extrinsic fraud, and therefore assert no cause for equitable relief against the decree whose vacation is sought, citing Calkin v. Wolcott et al., 182 Okla. 278, 77 P. 2d 96. Upon due consideration we must concur in this view. Whether or not the items disbursed were valid charges against plaintiff's estate was, of course, before the court when the guardian's report on same was presented, and was one of the primary questions to be determined at the hearing thereon.

The rule relied upon by the defendant comprehends not only matters that were actually tried, but also those that were in issue and might have been tried. Greene v. Greene (Mass.) 2 Gray, 361; and see Southwestern Surety Ins. Co. v. Richard, 62 Okla. 122, 162 P. 468; Driskill v. Quinn et al., 69 Okla. 77, 170 P. 495.

In Wright v. Saltmarsh, 174 Okla. 226, 50 P. 2d 694, it was demonstrated that failure of a party to disclose to the court facts within his knowledge which, if known by the court, would defeat his claim, is not such fraud as will vitiate a judgment in his favor and authorize a court of equity to set it aside. In this connection, see, also, Stout v. Derr, 171 Okla. 132, 42 P. 2d 136; Smith v. Smith, 180 Okla. 312, 314, 69 P. 2d 392, 394; Ely Walker Dry Goods Co. v. Smith, 69 Okla. 261, 160 P. 898. To charge that the county court decided erroneously the very matters which we have shown were before it for consideration and determination, and to allege, as the plaintiff does, that its erroneous judgment was the result of not being informed of matters it was duty bound to inquire into, is to disregard the presumption that such public officers discharge their duties, and to ask the district court to pass upon the same matters, or to relitigate questions already decided or res adjudicata.

According to the principles herein stated and applied, we find no cause for reversal of the trial court's judgment in any of the propositions urged for that purpose, and the same is hereby affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. OSBORN, J., absent.