(March 23, 1916.)

## AL JONES and HENRY JONES, Appellants, v. H. C. VAN-AUSDELN et al., Respondents.

[156 Pac. 615.]

Artesian Wells—Action to Enjoin Use· of—Proof Required—Con-flicting Evidence—Finding of Ultimate Facts—Decree—Adjudi-cation of Rights.

1.   Where the owners of a group of artesian wells bring an action against the owners of another group of wells which were sunk at a later date, to restrain the latter from operating their wells, on the ground that they are tapping the same subterranean flow and thereby decreasing the flow in plaintiffs' wells, satisfactory and convincing proof should be adduced before a court of equity would be justified in permanently enjoining defendants from the operation of their wells, since witnesses cannot testify by actual observation to the exact origin and course of subterranean waters, and the decrease in flow of plaintiffs' wells might be due to other causes.

2.   Where a trial court, sitting as a court of equity, makes find-ings of fact based upon conflicting evidence, and there is evidence to support both theories of the case, and from which reasonable men might draw different conclusions, such findings of fact will not be disturbed on appeal.

3.   Where a trial court makes a finding of fact which is ultimate in its effect and decisive of all the material issues, the losing party has no ground for complaint because the court does not make find-ings of other facts in issue which are probative or subordinate as regards the main issue in the case, and the determination of which is made unnecessary by such finding of ultimate facts.

4.   *Held,* that the record in this case supports the finding of the lower court to the effect that there was insufficient evidence to show the existence of an underground connection between plaintiffs' and defendants' wells.

5.   In an action to restrain the owners of a group of artesian wells from operating the same, on the ground that such operation decreases the flow of water in plaintiffs' wells, the gist of the action is the question of defendants' right to operate their wells, and when the court found that the evidence was insufficient to establish that there is an underground connection between the two groups of wells and accordingly rendered judgment in favor of defendants, the lower court was not required to adjudicate the rights of either of

the parties to the use of subterranean waters, even though such adjudication was prayed for in the complaint, since the court by its finding of fact has determined that the evidence does not show that the parties take water from the same subterranean flow.

[As to rights of adjoining land owners to use of premises, see note in 123 Am. St. 566.]

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. Edward A. Walters, Judge.

Action to restrain defendants from diverting water through certain artesian wells. Judgment for the defendants. *Modified and affirmed.*

W. P. Guthrie and J. C. Rogers, for Appellants.

"Our system requires a finding of fact upon every material issue." (*Carson v. Thews,* 2 Ida. 176, 9 Pac. 605.)

"Failure to find upon all the material issues upon which evidence was introduced is error for which a new trial will be granted." (*Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Cargnani v. Cargnani,* 16 Cal. App. 96, 116 Pac. 306; *Davies v. Angelo,* 8 Cal. App. 305, 96 Pac. 909.)

None of the findings made by the court will cure the error arising from the court's failure to find directly upon all the material issues arising under the pleadings. (*Sterrett v. Sweeney,* 15 Ida. 416, 128 Am. St. 68, 98 Pac. 418, 20 L. R. A., N. S., 963; *Pittock v. Pittock,* 15 Ida. 426, 98 Pac. 719; *Harlan v. Eli,* 55 Cal. 340; *Ladd v. Durkin,* 54 Cal. 395; *Ladd v. Tully,* 51 Cal. 277.)

If the defendants have a right to that portion of the decree establishing title in themselves, the same principle gives us the same right to have our ownership in the wells and to the use of the water established in the decree, and this right exists independent of the question as to whether there is a connection between the flow of water to the two systems of wells, or not, this being an action *in rem.* (2 Wiel on Water Rights

in the Western States, 3d ed., par. 1191, p. 1003, and authorities thereunder cited.)

C. C. Cavanah and A. M. Bowen, for Respondents.

The burden of proof is upon the plaintiffs. The proof, to establish an underground connection, must be direct and positive, and conclusively establish the connection. The influence or injury must not be theoretical or possible, but established by positive evidence, capable of no other reasonable construction. (*Bower v. Moorman*, 27 Ida. 162, 147 Pac. 496.)

The court is required to find on material issues and upon ultimate facts, not immaterial issues or probative facts. The ultimate fact in issue was whether defendants' wells tapped plaintiffs' flow and lessened same. This fact was found against plaintiffs, and therefore the extent of loss, if any, was immaterial. (*Foore v. Simon Piano Co.*, 18 Ida. 167, 108 Pac. 1038; *Fouch v. Bates*, 18 Ida. 374, 110 Pac. 265; *Brown v. Macey*, 13 Ida. 451, 90 Pac. 339; *Montpelier Mills Co. v. City of Montpelier*, 19 Ida. 212, 113 Pac. 741; *Edmundson v. Taylor*, 17 Ida. 618, 106 Pac. 991; *Leggat v. Blomberg*, 15 Ida. 496, 98 Pac. 723.)

The primary object of the suit at bar was to obtain an injunction restraining the use of defendants' wells. The decree of the court was responsive to this issue. No issue was made so as to warrant a decree for plaintiff unconnected with the use of defendants' wells. Where a plaintiff in equity frames his bill of complaint on a certain theory on which he bases his right to recover, the proof must be such as to warrant a decree in conformity to this theory; and it is not enough to show that the proof warrants relief on some other theory. (16 Cyc. 485; *Rejall v. Greenhood*, 92 Fed. 945, 35 C. C. A. 97; *Livingston v. Hayes*, 43 Mich. 129, 5 N. W. 78.)

Where the court grants all the relief necessary to effect the object of the court, and the entire purpose of the litigation has been served, it is not error for the court to refuse to go further. (*Hill v. Phelps*, 101 Fed. 650, 41 C. C. A. 569.)

SULLIVAN, C. J.—This action was brought by plaintiffs, who are appellants, for the purpose of restraining defendants from diverting water through certain artesian wells, which it was alleged derived their supply from a subterranean flow to which plaintiffs had a prior right.

It is alleged, among other things, in the complaint, that the appellants are partners and are operating under the name and style of Jones Brothers; that on the first day of May, 1906, and from thence on down to the commencement of this action, they were the sole owners of 320 acres of land (describing it) and the right to use for the irrigation of said land and for stock and domestic purposes 319.61 inches of water of the flow of certain artesian wells situated upon said lands; that the appellants constructed said wells to the depth of 550 and 560 feet respectively, and struck in each well a stream of subterranean water which flowed above the surface of the ground to a height of about twenty feet and in an aggregate amount of about 319.61 inches, which water was used by the appellants each year for the proper irrigation of said land and for stock and domestic purposes, and that such water was necessary to said plaintiffs for said purposes.

It is also alleged that in the month of October, 1910, without the consent and against the will of appellants, respondents sunk certain wells near appellants' said tract of land. The surface of the land where defendants' wells were sunk was about sixty feet lower than the surface of the land where appellants' wells were sunk. It is alleged that defendants' wells were sunk to a depth of four hundred to five hundred feet, and struck the same subterranean flow of water that supplied appellants' said wells and thereby reduced the flow of appellants' wells to the extent of from 75 to 100 inches and thereby deprived appellants of the enjoyment and use of said amount of water, to their great and irreparable damage and injury.

Plaintiffs prayed for an injunction against the defendants, requiring them to cease diverting said water by means of said wells, and that upon the final hearing said injunctive order be made perpetual and that plaintiffs be adjudged and de-

creed to be the prior appropriators of said subterranean flow of water as against defendants, to the amount of 319.61 inches thereof.

The defendants answered and put in issue many of the material allegations of the complaint and prayed that the plaintiffs take nothing by this action; that the injunction be denied and that defendants have judgment for their costs and for such other relief as to the court might seem just and equitable.

The issues thus made were tried by the court without a jury and the court made its findings of fact, conclusions of law and entered judgment in favor of the defendants, and decreed to the defendants the right to the use of all the water flowing from their said wells.

The appeal is from the judgment.

The main contentions are that the court failed to make findings of fact upon certain material issues made by the pleadings, and that the findings of fact made are not supported by the evidence.

Upon the first question it is contended that the court made no finding as to whether or not the appellants' wells had decreased in flow after the respondents' wells commenced to flow, and if they had decreased, that it failed to find how much the decrease was.

The finding of the court to which appellants particularly object is as follows:

"That the said wells of defendants are located and situated a distance of between 4,000 and 5,000 feet from the plaintiffs' said wells, and the evidence does not show any connection between the wells of the plaintiffs and the wells of the defendants, or that they tap or take water from the same or common source, or that the wells of the defendants or either of them have or do affect in any way the flow from plaintiffs' wells; and the court finds as a fact that there is no connection between the said wells of the defendants and the said wells of the plaintiffs described in the complaint; and the court further finds that defendants' wells, either separately or together, do not in any way affect the flow of water from the plaintiffs' said wells, or either of them, and have not in

the past affected the flow of plaintiffs' said wells, or either
of them, or caused any decrease in the flow thereof, and any
decrease in the flow of water from plaintiffs' wells, or either
of them, has been caused from some other and different cause
than the sinking or operation of defendants' wells or either
of them; that the supply of water for the defendants' said
wells comes from another and different flow or basin than that
supplying the wells of the plaintiffs.''

In view of this finding, which is ultimate in its effect and
decisive of all the issues raised by the pleadings, it is neces-
sary for us to determine whether there is evidence in the
record to support the finding of the lower court.

Much testimony was adduced at the trial by plaintiffs
in the attempt to prove a subterranean connection between the
group of artesian wells owned by plaintiffs and those owned
by defendants. This consisted not only of the evidence of
plaintiffs and others who had observed the flow of the wells
in the vicinity, but of experts who had made special investi-
gations accompanied by tests. On the other hand, the defend-
ants produced an array of witnesses, among whom were also
experts, claimed to possess special knowledge and experience
on the subject of artesian wells and waters, in the endeavor
to show that the two groups of wells had no underground
connection whatever, but were located in different artesian
basins.

The evidence shows that the two groups of wells were a
little over 4,000 feet apart. Another well which is referred
to in the record as the Hollister well, was located only about
850 feet from the plaintiffs' wells, and an underground con-
nection between the latter and the Hollister well would seem
to be fairly well established.

The main ground for plaintiffs' contention that the flow
of their wells had been lessened by the construction of de-
fendants' wells seems to be the circumstance that defendants'
wells were sunk about the time plaintiffs noticed a marked de-
crease in the flow from their wells. It appears, however,
from the evidence that this might have happened from other
causes, such as depletion of the artesian basin from which

plaintiffs' wells derived their supply.   It seems to be common experience with artesian wells that their flow tends to decrease within a few years, or may even cease altogether, irrespective of the construction of other wells in the vicinity. Or the decrease might have been occasioned by an unusually dry season about that time, or by obstructions in the wells which retarded the flow of the water, or by wastage caused by exploding dynamite in the wells in the attempt to increase their flow, or by the accumulation of sand or debris in the basin.   Again, it has been noticed that there are periodic variations in the flow of water from artesian wells, and that even changes in barometric pressure may make a marked difference in the volume of flow.

We mention these possible causes for a diminution in the flow of water from plaintiffs' artesian wells, not by way of intimating that any one of them was proven in this case to have been responsible for such decreased flow, but for the purpose of showing how necessary it is to take all these elements into account before concluding positively that the decrease in flow of any given group of wells is attributable to the sinking of other wells in the vicinity.   In other words, very convincing proof of the interference of one well with the flow of another should be adduced before a court of equity would be justified in restraining its proprietors from operating it on that ground.

These considerations were no doubt borne in mind by the trial court in reaching the conclusion that plaintiffs' proof lacked that positive and convincing quality which alone would justify him in finding that the allegations of their complaint were sustained by the evidence.   For instance, much stress is laid by plaintiffs' counsel upon the return of the water in the pipe leading from plaintiffs' six-inch well to the Jones residence for a period during the winter of 1911.   It is asserted that this return occurred at a time when the large Vanausdeln well was closed for a few days, and that the resumption of flow in the Jones six-inch well was accordingly proof of a direct underground connection between the two wells.   But a careful examination of the evidence discloses

that there were other elements or causes which might have had something to do with this alleged return of flow in the plaintiffs' six-inch well. There is testimony that when their eight-inch well was closed, the six-inch well would flow through the pipe to the house, but it does not appear whether it was closed at this time or not. Neither does it appear whether the Hollister well was closed at this time, although it was shown that the flowing of the Hollister well had a marked effect in decreasing the flow of plaintiffs' wells. It further appears that the two-inch pipe which conveyed the water from the six-inch well to the Jones' residence was not in the same position as it formerly had been when the water used to flow therein. Moreover, plaintiffs' witnesses themselves do not agree as to the exact time when the alleged return of flow in the six-inch well occurred. Lastly, there is evidence to the effect that the six-inch well had ceased to flow anyway, even before the large Vanausdeln well was bored.

This phase of the proof is a very good illustration of the danger of drawing hasty conclusions from the coincidence in time of two events, one of which might or might not have been the cause of the other. In this class of cases, opinion evidence, based upon proven circumstances from which the witnesses draw certain conclusions, must largely take the place of direct evidence, since no man can testify by actual observation as to the exact course or origin of underground waters. But where the testimony in such a case is conflicting, and from it reasonable men might draw different conclusions, since there is evidence to support both theories of the case, the judgment of the trial court will not be disturbed. This has been the uniform holding of this court. In the case at bar, the trial court not only heard the testimony of the witnesses on the stand and observed their demeanor while testifying, but himself visited the scene of the litigation and observed the physical features and geography of the neighborhood where these artesian wells were situated. There is expert evidence to the effect that a sort of "hogback" or underground reef, probably extended from the foothills beneath the surface of the ground so as to form a natural barrier to the passage of

underground waters between the plaintiffs' and defendants' wells, so that the Jones and Hollister wells, on one side, and the Vanausdeln wells on the other, occupied entirely separate artesian basins. The trial court may have concluded from his own observation of the surface indications that there was apparently good ground for this theory of the case, and in view of all these considerations the action seems to come peculiarly within that class of cases where the judgment of the lower court upon questions of fact should be accorded controlling weight. In our view of the matter, therefore, it would be futile to go further into the mass of testimony adduced at the trial of this case.

The evidence is amply sufficient to support the finding of the lower court to the effect that there is no evidence of a connection between plaintiffs' and defendants' wells.

Appellants assign as error the omission of the court to find whether or not appellants' wells had decreased in flow after respondents' wells were bored, and what, if any, decrease has taken place.

We think this matter is entirely disposed of by the court finding unqualifiedly that the evidence does not show any connection whatever between the two groups of wells. The ultimate fact in issue was whether the respondents' wells drew their supply from the same underground flow as appellants' wells, thereby causing a diminution in the flow of the appellants' wells. That is the allegation of the complaint, and it is denied by the answer. Since the lower court found the evidence to be insufficient to establish that respondents tapped the same flow that supplied appellants' wells, or to show that they are responsible for any loss of water which appellants experienced, it becomes wholly immaterial what that loss may have been, and it is difficult to conceive how a finding on the fact of loss could help appellants. As said by this court in the case of *Fouch v. Bates,* 18 Ida. 374, 110 Pac. 265: "Findings should be of the ultimate facts and not of the probative facts," and this is plainly the position taken by the trial court in making the finding objected to.

Counsel for appellants complain that the court in entering its decree established in respondents a permanent title to the lands, wells and water described in the respondents' answer, but that the court omitted to adjudicate appellants' rights in their property in its decree, although they claimed to be the prior appropriators of this subterranean flow. It is contended that appellants had a right to such adjudication and that such right is independent of the question as to whether there is a connection between the flow of water to the two systems of wells, this being an action *in rem*.

It is obvious, however, that this action differs somewhat from the ordinary action for the adjudication of conflicting water rights on the same stream. The complaint does not allege that the defendants claim any title to the waters flowing from plaintiffs' wells, but it is charged that by the operation of defendants' wells the flow of plaintiffs' wells is diminished, and plaintiffs accordingly seek to restrain defendants from the operation of those wells. The use or ownership by plaintiffs was not in issue in any way, but the gist of the action appears to be the legal right of defendants to operate their own wells. In finding that plaintiffs had not made sufficient showing to warrant a permanent injunction in their favor against the operation of defendants' wells, it was not necessary in this action for the lower court to adjudicate defendants' water right to the subterranean flow in question, but after finding that there was not sufficient evidence to establish the existence of an underground connection between the two groups of wells,—in other words, that the record fails to show that the parties litigant take water from the same source, the lower court might properly have left the parties where it found them, so far as any formal or permanent adjudication of the water rights of either is concerned. We are inclined to think there is some merit in appellants' objection to a partial or one-sided adjudication of water rights in this action, and the decree of the lower court will accordingly be modified so as to omit therefrom any adjudication of defendants' rights to the water flowing from their wells.

From an examination of the whole record, we find no error which would warrant a reversal of the judgment of the court below, and the cause is therefore remanded, with direction to the trial court to modify its judgment in accordance with the views expressed in this opinion, and as so modified the judgment is affirmed.   Costs awarded to respondents.

Budge and Morgan, JJ., concur.