(No. 6668.   May 10, 1939.)

RONALD HILL, Respondent, v. STEPHEN R. WILKIN-
SON and JAMES WATSON, Appellants.

[90 Pac. (2d) 696.]

244

O. A. Johannesen, for Appellants.

Alvin Denman, for Respondent.

HOLDEN, J.—On the ground he was induced by fraud to purchase certain farm lands, respondent brought this action to recover the initial cash payment. Feb. 19, 1937, appellant Wilkinson agreed, in writing, to sell and appellant Watson agreed to purchase an 80 acre tract of land located in Jefferson county, Idaho. The contract, executory in form, together with a deed to the property was placed in escrow. March 26, 1937, appellant Wilkinson and wife agreed, in writing, to sell and respondent Hill and wife agreed to purchase the same tract for the sum of $5,462.50. Respondent assumed and agreed to pay $1,433 on a first mortgage theretofore given for a larger amount to the Federal Land Bank, which amount was to be applied on the purchase price. Respondent also paid $1,800 in cash on the purchase price, the balance, by the terms of the contract, was to be paid in stated instalments, with interest. In order to effect the sale from Wilkinson to Hill, Watson assigned his contract to Wilkinson, receiving $912.50 out of the initial cash payment made by Hill at the time of the execution and delivery of the Wilkinson-Hill contract. The latter contract, together with a deed to the property, was placed in escrow with the Eastern Idaho Loan and Trust Co. at Idaho Falls. Thereafter, during the cropping season of the year 1937, respondent farmed, or attempted to farm the land.

Jan. 3, 1938, appellant Wilkinson demanded payment of certain delinquent taxes and water assessments. Jan. 18, 1938, respondent Hill gave appellants Wilkinson and Watson written notice of his intention to rescind the Wilkinson-Hill contract upon the ground of certain allegedly false and fraudulent representations concerning the presence and ex-

tent of noxious weeds, demanding return of the initial payment, to wit, $1,800. Feb. 10, 1938, appellants having failed to return the cash payment so demanded, this action was commenced to recover the amount with interest. May 19, 1938, the case was tried. July 16, 1938, findings of fact and conclusions of law were filed, and on the same day judgment was entered thereon against appellants for the sum of $1,800, with interest at the rate of 6% per annum from Jan. 18, 1938. July 18, 1938, notice of intention to move for a new trial was given and filed. August 5, 1938, supplemental notice of intention to move for a new trial was filed. Sept. 8, 1938, appellants' motion for a new trial was denied. October 8, 1938, Wilkinson and Watson jointly appealed from both the judgment and the order denying a new trial.

The trial court found, in substance: That at the time respondent agreed to purchase the land it was entirely covered with several inches of snow and respondent was thereby prevented from inspecting the same; that respondent had never before seen the land and appellants knew respondent could not examine the land because it was covered with snow; that appellants well knowing respondent wanted the land for the purpose of growing agricultural crops, and well knowing the land was foul with noxious weeds, falsely and fraudulently represented the land was entirely free from noxious weeds excepting a few small patches containing less than five acres; that respondent relied upon such false representations and relying thereon agreed to purchase the land, and made an initial payment of $1,800 on the purchase price; that between 50 and 60 acres were foul and infested with noxious weeds, namely: morning glory, Russian knap weed, Canadian thistle, and white top; that the land was practically useless for the purpose of raising agricultural crops; that respondent did not discover the wide-spread extent and distribution of the noxious weeds until he attempted in October and November, 1937, to harvest a crop of potatoes planted thereon; that respondent had never lived on the land and was not in possession after Dec. 1, 1937; that respondent offered to give appellants possession of the land and to execute and deliver to them a quitclaim deed to the property; that at some time prior to the trial of the cause appellants took possession of the tract and sold

it; that the property was not worth over $800; that respondent "did not pay the mortgage interest which became due according to the terms" of the Wilkinson-Hill contract because appellants failed to procure a segregation of the mortgage indebtedness; that respondent did not pay the taxes and water assessments because he had, at the time they became due and payable, "discovered the fraudulent representations" made by appellants; that appellant Wilkinson waived his right to a forfeiture of the Wilkinson-Hill contract by demanding respondent pay the delinquent taxes and water assessments.

It is contended by appellants, and correctly so, that the burden was upon respondent to prove his charge of fraud by clear and convincing evidence (*Nelson v. Hudgel*, 23 Ida. 327, 130 Pac. 85; *Fehr v. Haworth*, 33 Ida. 96, 190 Pac. 248; *Crumpacker v. Bank of Washington Co.*, 38 Ida. 534, 223 Pac. 229; *Smith v. Thomas*, 42 Ida. 375, 245 Pac. 399; *Smith v. Johnson*, 47 Ida. 468, 276 Pac. 320; *West v. Prater*, 57 Ida. 583, 67 Pac. (2d) 277); and that applying this rule the evidence is insufficient to support the finding of agency, the finding of respondent was prevented from inspecting the land, the finding the land was represented as having only a few small patches of noxious weeds amounting to less than five acres altogether, the finding between 50 and 60 acres were infested with noxious weeds, the finding the land was so infested with noxious weeds as to render it practically useless for the purpose of raising agricultural crops, the finding they falsely and fraudulently induced respondent to purchase the property. In fact, appellants challenge the sufficiency of the evidence to support the findings, either singly or as a whole.

The evidence is voluminous, the record on appeal embracing several hundred pages. It would be quite impossible, within reasonable limits, to set it out at length. We have, however, carefully and painstakingly examined the record reaching the conclusion the findings of the trial court are supported by clear and convincing evidence. In the first instance, in the trial court, as above stated, the burden was on respondent to establish the charge of fraud by clear and convincing evidence, but on appeal the findings will not be disturbed where there is sufficient substantial evidence to support

them, although conflicting. (*Syster v. Hazzard,* 39 Ida. 580, 229 Pac. 1110; *Rogers v. Crockett,* 41 Ida. 336, 238 Pac. 894; *Russell v. Boise Cold Storage Co.,* 43 Ida. 758, 254 Pac. 797; *Webster v. McCulloch,* 45 Ida. 604, 264 Pac. 384; *Boomer v. Isley,* 49 Ida. 666, 290 Pac. 405; *Isaak v. Journey,* 52 Ida. 392, 15 Pac. (2d) 1069; *Intermountain Assn. of Credit Men v. N. H. Hallstrom Coal Co.,* 53 Ida. 151. 22 Pac. (2d) 686; *Reinhold v. Spencer,* 53 Ida. 688. 26 Pac. (2d) 796; *California Jewelry Co. v. McDonald,* 54 Ida. 248, 30 Pac. (2d) 778; *Carrey v. Secesh Dredging etc. Co.,* 55 Ida. 136, 39 Pac. (2d) 772.)

It is also contended agency "can not be established by the representations of one claiming to be such agent." Agency was not so established in the case at bar. Without taking time and space to state all the evidence in the record bearing on the question of agency, we will briefly direct attention to the testimony of appellant Wilkinson. While testifying about a conversation he had with J. E. Fisher, an employee of the Eastern Idaho Loan and Trust Co., Realtors, which occurred before the Wilkinson-Hill land sale contract was executed, he said:

"Q. Well, just tell what was said with reference to the commission at the time, Mr. Wilkinson.

"A. It was said that we would get our price, net, out of the place and he (referring to Fisher) would add—the commission—have to raise the price to get his commission.

"Q. And that was all that was said about it?

"A. Yes, sir.

"Q. There was no argument about the commission?

"A. Not at that time.

"Q. Well, was there at any time?

"A. I don't believe there was."

The mere raising of the price of the property to take care of the payment of the commission could not alter the fact it was thereby understood and agreed, in the event a sale was made, a commission would be paid for services rendered in bringing about the sale. Furthermore, there could have been no consideration and no reason for the payment of a commission (later, in fact, paid) other than such services. The agreement to pay the commission for the services had the

legal effect of constituting the Eastern Idaho Loan and Trust Co., whose employee J. E. Fisher was, an agent fully authorized to sell the property at the price fixed. Stated differently, the above-quoted conversation clearly establishes this: The parties were endeavoring to reach an understanding concerning the payment of a commission; they did reach an understanding; it was, the price the property was to be, and was raised, by adding thereto the amount of the commission, and that the commission would be paid out of that price. That amounted to an offer on the part of the seller to pay the commission so added to, which thereby became a part of the purchase price, and an acceptance on the part of the realtors, constituting a contract of agency.

It is further contended the court erred in failing to make a finding as to the value of the use and occupation of the land in controversy for the year 1937. There was no showing by stipulation, proof or otherwise of rental value, therefore, no error.

Another contention is, respondent was guilty of laches in that: "If Hill was induced to enter into the contract with Wilkinson through fraud and misrepresentation as to weeds on the property, then Hill should have taken steps to rescind the contract in June, 1937, for he, at that time, was aware of all patches of weeds on the property."

The record shows Hill testified:

"Q. Mr. Hill, when did you first discover the wide-spread extent of the noxious weeds on this property?

"A. Well the widest extent wasn't discovered until I started to dig my potatoes. I had been cultivating them all summer.

"Q. And when was that?

"A. That was October twenty-first, I believe. The latter part of November, Nineteen, thirty-seven."

As argued by respondent: "Rescission of the contract of purchase within three months after the discovery of the complete fraud (as in the case at bar) is sufficiently prompt, especially where nothing transpired in the *interim* which would make recovery inequitable." (*Wilson v. Sunnyside Orchard Co.*, 33 Ida. 501, 196 Pac. 302.)

■■ Next comes the contention: ''The purchaser of land upon installments, who defaults in the payment of an installment as stipulated by the agreement, can not rescind the contract or breach the same and refuse to make the payments as they fall due, and thereupon maintain an action against the vendor for the installments previously paid.''

It was agreed time was the essence of the land sale contract; that in the event respondent failed to make any payment when the same became due, he would forfeit all payments made, as liquidated damages. Upon the failure of respondent to make any payment required by the terms of the contract, whether taxes, water assessments, interest or installments, appellant Wilkinson could, as he well knew, declare a forfeiture. Instead of doing that, after he claims respondent defaulted, he chose to and did demand payment of the delinquent taxes and water assessments. If respondent was under any obligation whatever to make the payments demanded, it was by reason of the terms of the land sale contract. And, of course, if the contract was no longer in force, by reason of the alleged default, appellant Wilkinson would have no right to demand payment of delinquent taxes and water assessments. Therefore, by demanding payment, Wilkinson necessarily recognized and expressly treated the contract as still being in full force and effect, thereby waiving the default. The contract could not be both void and in full force and effect at one and the same time. A vendor waives the right to rescind a contract by demanding payment. (66 C. J., p. 784.)

The judgment is affirmed, with costs to respondent.

Budge, Givens, Morgan, JJ., concur.

Ailshie, C. J., sat at the hearing but did not participate in the decision of the case.