(No. 6646.  December 15, 1939.)

A. C. FROST & COMPANY, a Corporation, Respondent and Cross-appellant, v. COEUR D'ALENE MINES CORPORATION, a Corporation, Appellant and Cross-respondent.

[98 Pac. (2d) 965.]

James A. Wayne and W. H. Langroise, for Appellant and Cross-respondent.

H. J. Hull and C. H. Potts, for Respondent and Cross-appellant.

BUDGE, J.—This action was brought by A. C. Frost & Company, a Washington corporation, against Coeur d'Alene

Mines Corporation, an Idaho corporation, upon a contract dated September 10, 1934, for the sale of 1,300,000 shares of the treasury stock of the Coeur d'Alene Mines Corporation at ten cents per share. This contract will be referred to as the option agreement. The complaint contains two causes of action growing out of the option agreement. The first cause of action is for the recovery of damages for an alleged breach of the option agreement. It might be here observed that the option agreement was in the first instance entered into between Coeur d'Alene Mines Corporation and one Boland and by the latter assigned to Frost & Company. The second cause of action was for money had and received by Coeur d'Alene Mines Corporation from the proceeds of the sale of treasury stock by an officer of the Coeur d'Alene Mines Corporation under the option agreement, as modified by subsequent agreements. After trial of the action the trial court allowed an amendment to the second cause of action to conform to the proof, permitting recovery of an amount greater than that mentioned in the second cause of action as originally filed. Under the option agreement Frost & Company had the option to become the purchaser of all or any part of 1,300,000 shares of the treasury stock of Coeur d'Alene Mines Corporation at ten cents per share. The amount sought to be recovered under the second cause of action is the amount received by Coeur d'Alene Mines Corporation in excess of ten cents per share for stock sold by Nuzum, president of the Coeur d'Alene Mines Corporation.

The trial court denied recovery for the alleged breach of the option agreement contained in the first cause of action, entering judgment that Frost & Company take nothing on its first cause of action. Judgment was awarded in favor of Frost & Company on the second cause of action against the Coeur d'Alene Mines Corporation for the sum of $16,306, with legal interest thereon, aggregating the total sum of $19,-132.38.

Frost & Company appealed from that portion of the judgment denying a recovery on the first cause of action and the Coeur d'Alene Mines Corporation appealed from that portion of the judgment allowing a recovery in favor of Frost & Company on the second cause of action.

In view of the determination hereinafter made of this case it will not be necessary to determine all of the assignments of error.

Assignments of error numbered 7 and 13 raise the point that the court was in error in determining that Frost & Company could not recover upon its first cause of action by reason of the fact that the option agreement was entered into in violation of the Securities Act of 1933 and acts amendatory thereof and supplementary thereto. The trial court held that both parties were charged with knowledge of the provisions of the Securities Act of 1933 and its amendments contained in the Securities Exchange Act of 1934, 15 U. S. C. A., sections 77 and 78, and by reason of such fact and the provisions of the foregoing acts the option agreement was unenforceable as to its unexecuted parts. In other words, that Frost & Company could not recover as on a breach the market value of 805,150 shares of the treasury stock covered by the option agreement, remaining unsold on the 13th day of March, 1936, by reason of the fact that the option agreement was unenforceable.

It appears unquestioned that the 1,300,000 shares of treasury stock involved in this action and covered by the option agreement were not registered with the Federal Trade Commission or the Securities and Exchange Commission.

Section 77e of the Securities Act of 1933 provides:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale. . . . . "

The evidence clearly supports the proposition that the dealings between Frost & Company and Coeur d'Alene Mines Corporation were in contravention of the foregoing section.

However it is urged that such transactions as were carried on with respect to the option agreement and the securities involved were exempt transactions under section 77d of the Securities Act of 1933 providing:

"The provisions of section 77e shall not apply to any of the following transactions:

Transactions by an issuer not involving any public offering;"

The proof rather than sustaining the burden of showing that the transaction was exempted affirmatively shows that all the stock offered for sale amounted to public offerings and that interstate means of communication and transportation were used in connection therewith. Certainly the facts disclosed by the option agreement itself and the so called subsequent modifications by letter, etc., and the many letters passing between Frost & Company and Coeur d'Alene Mines Company, recognizing that Frost & Company was selling the treasury stock to all and sundry, directing delivery of such treasury stock to other stock firms or brokers for sale to or by them flatly refutes such contention as does likewise the case of *Securities and Exchange Com. v. Sunbeam Gold Min. Co.*, 95 Fed. (2d) 699.

The remaining question to be determined is the effect of the foregoing conclusion upon the two causes of action presented. As heretofore set forth the first cause of action seeks recovery for the difference between the contract price of the treasury stock as fixed by the option and the market price of the stock at the time of the alleged breach of the option with reference to 805,150 shares covered by the option agreement remaining unsold at the time of the alleged breach.

The second cause of action as originally stated was for money had and received, being the sums of money in excess of ten cents per share, as fixed by the option agreement, upon 90,000 shares of treasury stock covered by the option agreement sold by one Nuzum, president of the Coeur d'Alene Mines Corporation to persons other than Frost & Company for nineteen cents per share. It being made to appear during the trial that the sales made by Nuzum as president of the Coeur d'Alene Mines Corporation thereafter amounted to the total

sum of 147,800 shares instead of 90,000 as alleged in the complaint an amendment to conform to the proof was permitted by the trial court and recovery was allowed for the sum of $16,306, together with interest, in favor of Frost & Company and against the Coeur d'Alene Mines Corporation. Further clarification of the situation with reference to the second cause of action is contained in the brief of Frost & Company as follows: On page 27 it is said:

"Mr. Nuzum reported to Mr. Frost that he sold 90,000 shares at 19c per share, and Mr. Frost acquiesced with the understanding that 10 per share should be applied on the option agreement, and $9000.00 placed to the credit of A. C. Frost and Company. Subsequently Mr. Nuzum stated that the stock he sold under the option agreement would run up to 100,000 shares. 147,800 shares were sold to others during the months of April and May, 1935, not including the sale of 80,000 shares to E. J. Gibson & Company and 20,000 shares to J. E. Jones Brokerage Company."

Again on page 16 of the brief of Frost & Company the following appears:

"In addition to these specific sales it (Coeur d'Alene Mines Corporation) received $10,000 for 100,000 shares of stock admittedly sold by R. W. Nuzum, and received much more stock sold by him, as the record shows that 147,800 shares of the treasury stock were sold to others during April and May, 1935, not including the Gibson and Jones sales."

It thus appears that the second cause of action seeks recovery of that amount of money received by the Coeur d'Alene Mines Corporation over and above ten cents per share, as fixed by the option agreement, as the price to Frost & Company, from the sale of 147,800 shares of stock sold by R. W. Nuzum, president of Coeur d'Alene Mines Corporation. With reference to this cause of action Frost & Company virtually concedes its sole right to recover such sums is dependent upon whether or not the option agreement was still in force, the following being recited on page 78 of Frost & Company's brief with reference to the proceeds of the stock sold by Nuzum:

"If it was Frost's money, it was solely because the option agreement was still in force. It could not have been Frost's money or respondent and cross-appellant (Frost & Company) money under any other condition. Neither Frost nor respondent and cross appellant had any right to the stock or the proceeds of sales of stock except such rights as existed under the option."

While this recital would appear to determine that no right of recovery on the second cause of action exists by reason of the fact that the option agreement was not in force, being void, there likewise appears to be further reason, amply supported by authority barring recovery upon either cause of action.

It should be borne in mind that the option agreement is void because prohibited by law. The well established rule is that if the contract is void because prohibited by law or as against public policy the courts will leave the parties in the identical situation in which it finds them, and the contract cannot be treated as valid by invoking estoppel. In *McFall v. Arkoosh,* 37 Ida. 243, 215 Pac. 978, this court said:

"At the close of the case it had been conclusively shown that the agreement upon which respondent relied in bringing this action was one forbidden by the regulations governing national forests. (1918 Use Book, p. 113, Reg. G–18.) Both parties were conclusively presumed to know that the federal statutes authorized the Secretary of Agriculture to make regulations governing the grazing of stock on national forests. (U. S. Comp. Stats., secs. 823 and 5126), and the courts of this state take judicial notice of such regulations (C. S. sec. 7923; *Caha v. United States,* 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415.) Such regulations have the force and effect of law. (*United States v. Grimaud,* 220 U. S. [506], 520, 31 Sup. Ct. 480, 55 L. Ed. [563], 569; *United States v. Eliason,* 16 Pet. (U. S.) 291, 10 L. Ed. 968.)

"The contract, being clearly in violation of the regulations governing national forests, no action could be maintained for its enforcement, and respondent, being *in pari delicto* with appellant, under the rule generally followed by the courts could not maintain an action for money paid pursuant to such

an agreement. The law leaves such parties where it finds them. (*Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575; *Lingle v. Snyder,* 160 Fed. 627, 87 C. C. A. 529; 13 C. J., p. 492, sec. 440; 2 Page on Contracts, p. 1920, sec. 1089; 2 Elliott on Contracts, p. 344, sec. 1067.)''

To same effect: *Deer Creek H. Dist. v. Doumecq H. Dist.,* 37 Ida. 601, 218 Pac. 371. In *Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575, this court determined that rights based on a violation of law will not be enforced, and if a transaction is illegal because in contravention to a statute, it will not be upheld in any way, but the parties will be left in the situation in which they have voluntarily placed themselves. In *Pacific Elec. Ry. Co. v. Commonwealth Bond & C. Ins. Co.,* 55 Cal. App. 704, 204 Pac. 262, the rule is stated in the following language:

''We may also concede the rule to be well settled that a party to an *ultra vires* contract will not be allowed to plead *ultra vires* while at the same time retaining benefits thereunder. This, however, only in part meets the objections made by Makely to the validity of the assignment. For there is a limitation upon the above rule to the effect that, where the contract is illegal or against public policy, the courts will refuse to enforce it, and will leave the parties where it finds them, regardless of the fact that one of them may be retaining benefits received thereunder. *Visalia Gas etc. Co. v. Sims,* 104 Cal. 326, 37 Pac. 1042, 43 Am. St. 105. A contract that is unlawful as being against the express provisions or general policy of any particular statute is void and will not be enforced by the courts. See note to *In re Assignment Mutual Guaranty Fire Insurance Co.,* 107 Iowa 143, 77 N. W. 868, 70 Am. St. Rep. 149, at page 170, and cases cited thereunder. These legal principles become decisive of the present appeal, because under the Workmen's Compensation Act as it stood at the time of this purported assignment, there was the following provision:

'' 'No claim for compensation shall be assignable before payment.' ''

In *Reno v. American Ice Mach. Co.,* 72 Cal. App. 409, 237 Pac. 784, dealing with a similar situation wherein a subscrip-

tion agreement for corporate stock was held to be void because of the absence of a permit as prescribed by law for the corporation to issue said stock, it was said:

"The doctrines of estoppel by conduct and ratification have no application to a contract which is void because it violated an express mandate of the law or the dictates of public policy. Such a contract has no legal existence for any purpose, and neither action nor inaction of a party to it can validate it, and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity. *Colby v. Title Ins. etc. Co.,* 160 Cal. 632, 644, 117 Pac. 913, 35 L. R. A. (N. S.) 813, Ann. Cas. 1913A, 515; *Lukens v. Nye,* 156 Cal. 498, 505, et seq., 105 Pac. 593, 20 Ann. Cas. 158, 36 L. R. A. (N. S.) 244."

The case of *McManus v. Fulton,* 85 Mont. 170, 278 Pac. 126, 67 A. L. R. 690, considers the principles involved to some length and therein it is said in part:

" 'The great weight of authority is that where a party comes into court seeking to enforce a contract which is against public policy or is prohibited by public law, the court will refuse to aid either party and will leave them where they have placed themselves, and in refusing to enforce such contracts the court does not act for the benefit, or for the preservation of the alleged rights, of either party, but in the maintenance of its own dignity, the public good and the law of the state.' And cases cited. *Smythe v. Evans,* 209 Ill. 376, 70 N. E. 906.

"As we said in *Glass v. Basin & B. S. Min. Co.,* 31 Mont. 21, 77 Pac. 302, quoting from Dean Lawson's article in 9 Cyc. page 546: 'No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out, nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The rule is expressed in the maxims, *"Ex dolo malo non oritur action,"* and *"In pari delicto prior est conditio defendentis."* The law, in short, will not aid either party to an illegal agreement. It leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one in enforcing it, or give damages for a breach of it, or set it

aside at the suit of the other, or, when the agreement has been executed in whole or in part by the payment of money or the transfer of other property, lend its aid to recover it back.' (Citing many cases in accord.)''

See, also, cases cited in *McManus v. Fulton, supra,* and note thereto, p. 716, 67 A. L. R.; *National Union Indemnity Co. v. Bruce Bros.,* 44 Ariz. 454, 38 Pac. (2d) 648; *Colby v. Title Ins. & Trust Co.,* 160 Cal. 632, 117 Pac. 913, Ann. Cas. 1913A, 515, 35 L. R. A., N. S., 813; *Baker v. Couch,* 74 Colo. 380, 221 Pac. 1089; *Short v. Bullion-Beck & Champion Min. Co.,* 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 603; *Morey v. Paladini,* 187 Cal. 727, 203 Pac. 760; *Bowman v. Phillips,* 41 Kan. 364, 21 Pac. 230, 13 Am. St. 292, 3 L. R. A. 631; *Dool v. First Nat. Bank of Calexico,* 209 Cal. 717, 290 Pac. 15. The conclusion which must be reached is ably expressed in *Hoffman v. Mc-Mullen,* 83 Fed. 372, 45 L. R. A. 410, 28 C. C. A. 178, 48 U. S. App. 596, namely:

''If from the plaintiff's own showing or otherwise, the cause of action appears to arise *ex turpi* cause, or out of a transgression of a positive law of the country, then the court says he has no right to be assisted.''

The judgment denying recovery upon the first cause of action is therefore affirmed. The judgment permitting recovery upon the second cause of action must be reversed and remanded with instructions to enter judgment in favor of Coeur d'Alene Mines Company, and it is so ordered.

Givens and Morgan, JJ., concur.

Ailshie, C. J., dissents from a reversal of the judgment.

Holden, J., dissents.

Petition for rehearing denied.