(No. 6646.   July 18, 1941)

A. C. FROST & COMPANY, a corporation, Respondent and Cross-Appellant, v. COEUR D'ALENE MINES CORPORATION, a corporation, Appellant and Cross-Respondent.

(115 Pac. (2d) 928)

James A. Wayne, W. H. Langroise and Maurice H. Greene, for Appellants and Cross-Respondents.

H. J. Hull, C. H. Potts and Ernest L. Wilkinson, for Respondent and Cross-Appellant.

BUDGE, C.J.—For convenience A. C. Frost & Company will be referred to as plaintiff, Coeur d'Alene Mines Corporation as defendant.

The question of the validity of the option agreement challenged by the defendant, predicated upon the proposition that the plaintiff was without corporate qualifications to maintain the action against the defendant having heretofore been disposed of in *A. C. Frost & Company v. Coeur d'Alene Mines Corp.*, 60 Ida. 491, 92 P. 2d 1057, will not be discussed. The validity of the option agreement having been finally determined in *A. C. Frost & Co., v. Coeur d'Alene Mines Corp.*, 61 Sup. Ct. Reporter, 414 requires no further attention. *A. C. Frost & Co., v. Coeur d'Alene Mines Corporation*, 61 Idaho 21, 98 P. 2d 965.

There are two causes of action alleged in plaintiff's complaint. In the first one plaintiff seeks to recover from defendant $300,000 alleged damages for breach of contract. The second cause of action is one to recover $16,306

alleged to be due from defendant to plaintiff on account of part performance of the alleged contract by plaintiff.

The second cause of action will be disposed of first.

On September 10, 1934, defendant and one Boland, acting for plaintiff, entered into a written contract under the terms of which, Boland was given exclusive right and option to purchase the whole or any part of 1,300,000 shares of the treasury stock of the defendant at 10c per share, payable in monthly installments. Boland assigned the contract to the plaintiff. The contract was modified during the month of April, 1935, and again in May, 1935, when it was agreed by the parties that all defaults by plaintiff prior to May 15, 1935, were waived.

The trial court found as to the second cause of action:

"That the defendant is indebted to the plaintiff in the sum of $16,306.00 with interest thereon at the rate of 6% per annum from the 16th day of August, 1935, upon an account for moneys had and received from the proceeds of the sale of 90,000 shares of the treasury stock at 19c per share, and 89,850 shares of the treasury stock at various prices per share, made by Mr. R. W. Nuzum, and received by the defendant under said contract, Exhibit A, as modified by the agreement of May 15, 1935, for the use of plaintiff, no part of which has been paid, although plaintiff has demanded payment thereof, and the defendant has acknowledged its indebtedness to the plaintiff in that amount."

Judgment was awarded in favor of plaintiff on its second cause of action. In defendant's supplemental brief the following language appears: "There is no dispute that over and above the option price of 10c per share the Coeur d'Alene Mines Corporation received between January 1, 1935 and March 11, 1936, the sum of $16,306.00 which is duly credited on its books to A. C. Frost & Company." It is strenuously insisted, however, that while the above amount was due plaintiff, that the same was not payable except out of the first profits of the Coeur d'Alene Mines Corp., and since no evidence is offered to prove that any profits had ever been made prior to the commencement of the action, no recovery could be had.

To determine the point raised that no recovery could be had by plaintiff on its second cause of action, necessitates a construction of the modification agreement of May 11, 1935, which consists of a letter written to defendant by plaintiff which is as follows:

"I am willing that the proceeds from the sale of the treasury stock after the sale of the next 20,000 shares shall be placed in the treasury for the purpose of meeting the following expenditures and disbursements." Then follows a list of the expenditures and disbursements to be made, after which the following language is used.

"All credits over and above ten cents per share to be placed to the credit of A. C. Frost & Company, with interest at six per cent per annum to be reimbursed to us from the first earnings of the property.

"As to the amounts realized from the proceeds of the sale of treasury stock made by Mr. R. W. Nuzum, they are to remain in the treasury and the proceeds over and above ten cents per share shall be placed to the credit of A. C. Frost & Company."

In other words, the defendant seeks to defeat plaintiff's recovery upon its second cause of action upon the sole and only ground that by reason of the modification agreement on May 11, 1935, the proceeds derived from the sale of stock under the option agreement were to be paid to plaintiff only out of earnings or profits made by defendant corporation in the operation of its mine. If none were made or shown to be made, plaintiff could not recover on its second cause of action.

It will be observed that the Nuzum sales were governed by the last paragraph of the agreement of May 11, 1935, which does not provide that payment to plaintiff of all credits over and above 10 cents per share of treasury stock sold by Nuzum and placed to plaintiff's credit on the books of defendant, shall be paid out of earnings.

The question then arises, if the sales made by Nuzum and all amounts over and above 10 cents per share were to be paid out of the first earnings of the defendant corporation, would it have been necessary to have added the

latter clause to the letter of modification? The parties to the modification placed an interpretation on the contract. The evidence discloses that on May 15, 1935, and again on May 16, 1935, being subsequent to the modification on May 11, 1935, defendant actually paid to plaintiff $10,000 representing the proceeds that defendant had received on some of this very stock sold by Nuzum, which would seem to lead to the conclusion that the last paragraph of the letter of May 11th, modified the preceding paragraph, and that it was not intended by the parties that the $16,306 credited upon the books of defendant corporation to plaintiff should be paid out of the first earnings of defendant corporation.

Attention might also be directed to the trial court's finding Number 16, heretofore quoted, in which the court finds that "the sale of 90,000 shares of the treasury stock at 19c per share, and 89,850 shares of the treasury stock at various prices per share, made by Mr. R. W. Nuzum, and received by defendant under said contract, Exhibit "A," modified by said agreement of May 15, 1935, for the use of plaintiff, no part of which has been paid, * * * * and the defendant has acknowledged its indebtedness to plaintiff in that amount." It is also urged by defendant that when plaintiff executed the modification of May 11, 1935, he also agreed with Nuzum that "in consideration of and in appreciation of the time, ability and interest given by you to the Coeur d'Alene Mines Corporation, we agree that you shall receive 25% of the profits of 80,000 shares sold to W. J. Gibson & Company, and 25% of the profits on all future treasury stock sold, provided the same is sold for not less than 40c per share. It is also agreed that you shall receive 50% of the profits of the approximate 100,-000 shares of treasury stock recently sold by you." Defendant further urges that on June 15, 1936, prior to the institution of this action, Nuzum assigned his interest in the $16,306 to defendant, which assignment operated as payment by defendant to plaintiff to the extent of Nuzum's interest therein.

The trial court made no findings with reference to this so-called assignment by plaintiff to Nuzum or the purported assignment by Nuzum to defendant. Apparently

this question was not an issuable question at the trial. The defendant corporation never acted upon the alleged assignment or accepted it so far as we can ascertain from the record. There was no change made in the books of the Company reducing the credit to plaintiff. On the other hand, the plaintiff is credited on defendant's books for the full amount of the $16,306.

There seems to be no merit in the contention that on May 11, 1935, the "contingent account in favor of A. C. Frost & Company was $25,071.00, the total amount of profits on past sales made by Nuzum. Of that amount $13,000 was paid to plaintiff. This left a balance of $12,071.00 rather than $16,306.00." Exhibit No. 74, defendant's own record, shows a balance due plaintiff on March 16, 1936 of $16,306. Then, again in defendant's brief we find the following: "There is no dispute that, over and above the option price of 10c per share, the Coeur d'Alene Mines Corporation received between January 1, 1935 and March 11, 1936 the sum of $16,306.00, which it duly credited on its books to A. C. Frost & Company."

Finding no reversible error in the record as to plaintiff's second cause of action, the same is affirmed.

Coming now to the first cause of action in which plaintiff seeks to recover from the defendant $300,000 for the alleged breach of the option agreement heretofore referred to and by one Boland assigned to plaintiff. Plaintiff contends throughout that defendant breached the contract and that by reason thereof he suffered damages in the amount above stated. On the other hand, the defendants contend that plaintiff breached the contract, and cannot recover in this action.

The trial court found upon this point that:

"The plaintiff did not fully perform what was required of it by virtue of said option agreement and the modifications thereof as the assignee of the said W. J. Boland, until prevented from further performance thereof by the defendant, but because of its inability to finance the purchase of the stock according to the terms of the option agreement, and to have the stock registered with the Securities Exchange Commission so that it might be sold

upon different exchanges of the country, the plaintiff abandoned the option to purchase the remainder of the stock covered by said option agreement, in the summer of 1935, and did not thereafter exercise its rights under said option, or attempt to make further purchase of the stock." (Finding No. 9.)

In finding Number 11, the trial court found that:

"That on or about March 13, 1936, the defendant caused to be served on plaintiff a notice of the termination of said option agreement, on the ground of failure in performance thereof by the plaintiff. The plaintiff had not fully performed said contract up to the time it was prevented from so doing by the defendant, and was not at all times ready, willing and able to perform the same. The defendant did not renounce said contract in June, 1935, or refuse to be longer bound thereby, or so notify plaintiff, and did not continuously thereafter repudiate its obligations under said contract, or refuse to deliver any of said stock to the plaintiff. The defendant did not prevent the plaintiff from performing said contract, and the failure of the plaintiff to perform the contract was due to its inability to finance the payments and to register the stock."

It will be observed from the court's findings that plaintiff's breach of the contract is predicated on three grounds. First, "because of its inability to finance the purchase of the stock according to the terms of the option agreement." Second, failure "to have the stock registered with the Securities Exchange Commission so that it might be sold upon different exchanges of the country." Third, "plaintiff abandoned the option to purchase the remainder of the stock covered by said option agreement, in the summer of 1935, and did not thereafter exercise its rights under said option, or attempt to make further purchase of the stock."

█ The failure to register the stock with the Securities Exchange Commission did not render the contract void or unenforceable. *A. C. Frost & Co. v. Coeur d'Alene Mines Corp.*, 61 Sup. Ct. Reporter 414.

█ There is a sharp conflict in the evidence as to whether or not plaintiff was unable to perform the con-

tract by reason of its inability to finance the purchase of the remaining stock covered by the option agreement. The evidence is also conflicting as to whether or not plaintiff abandoned its option to purchase the remainder of the stock covered by the option agreement. To recite the conflicting evidence, which is voluminous on these points, would unduly extend this opinion.

The rule is fundamental in this jurisdiction that the judgment of the trial court will not be disturbed where there is a conflict in the evidence but there is sufficient proof, if uncontradicted, to sustain the judgment. "Findings of fact based on sufficient evidence, if uncontradicted, to sustain them will not be disturbed because of evidence conflicting therewith, introduced by the adverse party." *Gore et al. v. Richard Allen Mining Company,* 61 Idaho 622, 105 P. (2) 735.

In *Wright v. Rosebaugh,* 46 Idaho 526, 269 Pac. 98, this court announced the following rule:

"* * * * It has been said that in such cases * * * * the determination of that [the] court in favor of either party upon conflicting or contradictory evidence [as in the instant case] is not open to review in the appellate court."

In *Gore v. Richard Allen Mining Company, supra,* this court said:

"Where a trial court, sitting as a court of equity, makes findings of fact based upon conflicting evidence, and there is evidence to support both theories of the case, and from which reasonable men might draw different conclusions such findings of fact will not be disturbed on appeal." See also, *Jones v. Vanausdeln,* 28 Idaho 743, 156 Pac. 615; *School Dist. No. 2 v. Butler,* 53 Idaho 187, 22 P. (2) 685; *Hill v. Wilkinson,* 60 Idaho 243, 90 P. (2) 696.

The judgment of the trial court as to each cause of action is affirmed. Costs to plaintiff (respondent and cross appellant).

GIVENS, MORGAN and AILSHIE, JJ., concur.

HOLDEN, J., concurs in affirming the judgment of the trial court as to the second cause of action, but dissents from the affirmance of the judgment of the trial court as to the first cause of action.